[No. B179325. Second Dist., Div. Four. Feb. 6, 2006.]

PREMIER MEDICAL MANAGEMENT SYSTEMS, INC., et al., Plaintiffs and Respondents, v.
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION et al., Defendants and Appellants.

## Counsel

Lord, Bissell & Brook, C. Guerry Collins, William S. Davis and Conrad V. Sison for Defendant and Appellant California Insurance Guarantee Association.

Pillsbury Winthrop Shaw Pittman, John S. Poulos and Andrea L. Courtney for Defendant and Appellant Pacific Secured Equities, Inc.

Heggeness & Sweet and Clifford D. Sweet III for Defendants and Appellants Insurance Company of the West and The Explorer Insurance Company.

Yohman, Parker, Kern, Nard & Wenzel and Richard J. Kern for Defendant and Appellant American All-Risk Loss Administrators.

Gray, York & Duffy and John J. Duffy for Defendant and Appellant HMI Associates, Inc.

Schaffer, Lax, McNaughton & Chen and John H. Horwitz for Defendant and Appellant Lehman Foods, Inc.

Roxborough Pomerance & Nye and Michael Breen Adreani for Defendants and Appellants Elite Personnel Services, Inc. and Select Personnel Services.

Riley & Reiner, Raymond L. Riley and Christopher J. Hamner for Plaintiffs and Respondents.

## OPINION

**EPSTEIN, P. J.**—The principal issue on this appeal is whether the trial court erred in denying a special motion to strike a complaint under the anti-SLAPP law, Code of Civil Procedure section 425.16 (strategic lawsuit against public participation, hereafter section 425.16). The dispute originated in efforts by insurers and employers to obtain a determination from the Workers' Compensation Appeals Board (WCAB) as to whether the plaintiff Premier Medical Management Systems, Inc. was improperly representing treating physicians in WCAB proceedings. Premier and five affiliated treating physicians sued the insurers and employers, alleging various tort and statutory causes of action based on claims that the defendants were in fact engaged in anticompetitive activity. The trial court denied the defendants' special motion to strike.

We conclude the complaint falls within the ambit of section 425.16. We also conclude that plaintiffs cannot establish a probability of prevailing on the merits because the conduct of defendants which forms the basis for the complaint is petitioning activity protected by the First Amendment. Plaintiffs fail to present any exception to that doctrine that would enable them to prevail on the merits. The trial court erred in denying defendants' special motion to strike.

### FACTUAL AND PROCEDURAL SUMMARY

The Workers' Compensation Act (WCA) is "a comprehensive statutory scheme governing compensation given to California employees for injuries incurred in the course and scope of their employment." (*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 810 [102 Cal.Rptr.2d 562, 14 P.3d 234] (*Vacanti*), citing Lab. Code, § 3201.) Under this scheme, an insurer ordinarily must pay all medical or medical-legal bills of an injured employee within 60 days of receipt. (Lab. Code, §§ 4603.2, subd. (b), 4622, subd. (a).) If the insurer contests the bill, payment is due only if ordered by the WCAB. (Lab. Code, §§ 4603.2, subd. (b), 4622, subd. (a).)

As the Supreme Court explained in *Vacanti*, medical providers who treat employee injuries covered by the WCA may file lien claims for the cost of their services directly with the WCAB. (*Vacanti, supra*, 24 Cal.4th at p. 811, citing Lab. Code, §§ 4903, 5300.) Such a provider is a "party in interest" to the WCAB proceeding, with full due process rights, including the right to be heard. (*Vacanti*, at p. 811.)

In this case, California Insurance Guarantee Association (CIGA) became responsible for some covered claims because of the insolvency and liquidation of the insurer on those claims. It disputed charges for services rendered

through Premier. In July 2002, CIGA asked the WCAB to consolidate 13 pending cases involving claims filed by Premier plaintiffs in litigated cases covered by CIGA. An amended petition for removal and consolidation was filed in October 2002.

In September 2002, defendant The Explorer Insurance Company (Explorer) and defendant Insurance Company of the West (ICW) filed separate petitions to consolidate several pending proceedings before the WCAB involving Premier-related bills and liens. In late 2003, other defendants[1] also filed petitions to consolidate Premier-related WCAB liens.

Defendants argued that these proceedings should be consolidated, based on allegations that Premier and its affiliates were unlawfully practicing medicine, chiropractic treatment, and physical therapy as a result of illegal fee-sharing in violation of Business and Professions Code section 650. They also alleged that Premier and its affiliates were illegally referring business and making improper and excessive charges.

Premier opposed the consolidation petitions, arguing that they were brought for the improper purpose of delay. The WCAB ordered consolidation in May 2004. It reasoned that the business practices of Premier and its affiliates were common issues in each of the cases for which consolidation was sought, and that to litigate these issues separately in hundreds of workers' compensation cases would clog the workers' compensation tribunals. The workers' compensation judge noted that if the defendants prevailed in their arguments, all lien claims could be denied. The WCAB granted consolidation and stayed all liens. Its order was later amended to add claims involving the other defendants in this action. The workers' compensation judge clarified that the scope of the stay extended to all Premier bills and liens against the defendants in the consolidated actions. During the appearance at which this ruling was announced, counsel for Premier stated that he planned to sue defendants under the Racketeer Influenced and Corrupt Organizations Act, title 18 United States Code section 1961 et seq. (RICO).

The complaint was filed in July 2004. Plaintiffs are Premier Medical and five individual physicians affiliated with it (Francis G. D'Ambrosio, Robert Schatz, Frank J. Coufal, Afshin Mashoof, Manuel Anell). We refer to them collectively as Premier or Plaintiffs. The named defendants are CIGA, several

---

[1] Select Personnel Services and CAN, Intercare and American All-Risk Loss Administrators.

insurance companies, and other entities.[2] All are defendants in the consolidated workers' compensation cases in which lien claims have been filed by Plaintiffs. We refer to them collectively as defendants.

The gravamen of the complaint is that after Premier submitted plaintiff physicians' bills to defendants for payment, and filed liens in numerous workers' compensation cases before the WCAB, defendants collectively conspired to contest, delay, and avoid payment of these bills and liens.

The first cause of action alleges violation of the Cartwright Act (Bus. & Prof. Code, § 16720), the state antitrust statute. The complaint alleges that the defendants conspired to delay or avoid payment of the bills and liens; reduce the amount paid on the claims; prevent lawful competition by the plaintiff physicians; fix the amount Plaintiffs could bill or lien for treatment of medical services to the employers' applicants; agree to pay a certain price (unilaterally agreed upon by defendants) on Plaintiffs' claims; and "pool, combine and directly or indirectly unite other interests connected with the payment to Plaintiffs for medical treatment and services provided Employers' Applicants so that the price of such treatment and medical services would be affected to Defendants' benefit." It also alleges the price fixing directly or indirectly affected free and unrestricted competition between Plaintiffs and defendants' preferred medical providers. Plaintiffs allege that these activities produced multiple anticompetitive results, such as restriction on competition and on applicants' ability to choose service providers.

The second cause of action claims violations of the RICO statute, title 18 United States Code sections 1961, 1962(c). It alleges that the insurers were "enterprises" through which defendants conspired to perpetrate a scheme of unlawfully delaying or refusing to pay claims. The complaint also alleges that defendants engaged in racketeering activities including mailing and electronically wiring multiple wrongful and unlawful objections to billings and liens so that defendants could strong-arm Plaintiffs to accept less on the claims.

The third cause of action, for violation of Business and Professions Code section 17200, incorporates the previous allegations of improper conduct and

---

[2] American Casualty Company of Reading, Pennsylvania (erroneously sued as CNA Insurance Company, Inc.; we refer to it as American Casualty); Pacific Secured Equities, Inc., (doing business as InterCare Insurance Services); Insurance Company of the West; Explorer; American All-Risk Loss Administrators; Elite Personnel Services, Inc.; Headway Corporate Staffing; USA Biomass Corporation; Good Nite Inn, Inc.; Abbey Party Rents; Southwest Trails; Lehman Foods, Inc.; San Fernando Valley Association; Terry Hinge Hardware Co.; Select Personnel Services; Encore Painting; King Wire Partitions; HMI Associates; Kodiak Construction, Inc.; Basement Clothing, Inc.

asserts that defendants conspired to do these acts, which were not a normal part of the workers' compensation claims process. The fourth cause of action, for intentional interference with contractual and prospective economic relations, alleges: "Physicians had an existing economic relationship with certain attorneys for various Applicants, and such relationships held present and probable future economic benefits to Physicians. Physicians customarily provided for the clients of those attorneys medical treatment and medical services for which they were entitled to payment under the workers' compensation system." Plaintiffs allege that defendants engaged in the conduct which forms the basis of the complaint with the intent to interfere with said relationships.

The fifth cause of action for negligent interference is similar, alleging that defendants knew, or should have been aware, of the relationship between the physicians and applicant attorneys, and that damage to the physicians' businesses would also damage those relationships. The sixth cause of action for abuse of process alleges that defendants utilized proceedings before the WCAB to engage in an unlawful course of conduct for the purpose of obtaining a collateral advantage not directly related to the WCAB. Defendants allegedly acted with the ulterior motive of damaging or destroying the lawful business of Plaintiffs in order to maximize profits.

The complaint alleges that the defendants engaged in this conduct with malice. Plaintiffs seek $15,000,000 in compensatory damages and restitution, as well as punitive damages, injunctive relief, costs, and fees.

Some of the defendants filed joint demurrers, motions to strike portions of the complaint, and a special motion to strike.[3] Others joined in the special motion to strike. In the end, 10 of the 21 defendants joined in that motion.[4] We refer to this group of defendants collectively as the moving defendants. They argued that the complaint is an anti-SLAPP lawsuit because it is based entirely on the defendants' constitutional right to petition the WCAB. In support of their motion, defendants filed declarations and exhibits relating to the consolidation petitions. Plaintiffs opposed the special motion to strike, submitting their own declarations and exhibits.

---

[3] On appeal, CIGA argues that the trial court's ruling on the special motion to strike also should be reversed because it is immune from suit under state and federal law. Those grounds were raised in CIGA's demurrer, which was overruled by the trial court except as to the RICO cause of action, but were not raised in the special motion to strike. Our conclusion that the special motion to strike should have been granted renders the issues raised on the demurrer moot.

[4] The parties moving to strike the complaint under the anti-SLAPP statute are: CIGA, American Casualty, Pacific Secured Equities, Inc., Insurance Company of the West, Explorer, American All-Risk Loss Administrators, Elite Personnel Services, Inc., Lehman Foods, Inc., Select Personnel Services, and HMI Associates.

The trial court denied the special motion to strike. It concluded that the first five causes of action "do not satisfy the first prong of the SLAPP analysis because they are not based on any communication made in anticipation of litigation." Although the trial court found the sixth cause of action for abuse of process satisfied the first prong of the statute, it concluded that Plaintiffs had submitted sufficient evidence to satisfy the second prong, by showing a probability of success on the merits. The moving defendants filed a timely appeal from this order.

## DISCUSSION

### I

An anti-SLAPP motion "requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds that such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) "Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Ibid.*) On appeal, its determination of each step is subject to de novo review. (*Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456 [125 Cal.Rptr.2d 534].)

The moving defendant must demonstrate that the conduct on which the plaintiff's complaint is based falls within one of the four categories described in section 425.16, subdivision (e), which defines acts " 'in furtherance of a person's right of petition or free speech under the United States or California Constitution . . . .' " (*Equilon, supra,* 29 Cal.4th at p. 66.) "In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech. (*Equilon, supra,* 29 Cal.4th at pp. 67–68; see also *Briggs* [*v. Eden Council for Hope & Opportunity* (1999)] 19 Cal.4th [1106,] 1114 [81 Cal.Rptr.2d 471, 969 P.2d 564].)' " (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695], italics omitted.) The principal thrust or gravamen of the claim determines whether section 425.16 applies. (*Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 102–103 [15 Cal.Rptr.3d 215] (*Mann*).)

Subdivision (e) of section 425.16 provides in relevant part that, as used in that statute, " 'act in furtherance of a person's right of petition or free speech

under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement . . . made before a legislative [or] executive . . . proceeding . . . ; (2) any written or oral statement . . . made in connection with an issue under consideration or review by a legislative [or] executive . . . body . . . ; (3) any written or oral statement . . . made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest."

The moving defendants argue that the entire complaint is an anti-SLAPP suit, subject to a special motion to strike. This is so because the complaint "wholly arises from, and is predicated upon, [defendants'] acts and communications in connection with or in proceedings before the [WCAB]." Defendants argue that the entire process of submitting bills and lien claims for medical services in pending WCAB cases is inherently part of the WCAB litigation process.

In support of that proposition, they rely on *Vacanti, supra*, 24 Cal.4th 800, which held that claims by workers' compensation medical providers for damages arising out of insurers' failure to make full and timely payment on their lien claims came within the exclusive remedy provisions of the WCA. The court concluded that "the alleged injury underlying all of plaintiffs' causes of action is collateral to or derivative of a compensable workplace injury and falls within the scope of the exclusivity provisions." (*Vacanti, supra*, 24 Cal.4th at p. 815.)

The moving defendants reason that they were sued because they exercised their statutory right to object to Plaintiffs' bills and liens claims. They also observe that Plaintiffs pursued payment in workers' compensation litigation. The moving defendants invoke the rule that communications preparatory to litigation are included within the ambit of the anti-SLAPP law.

The Premier plaintiffs argue that the entire complaint does not come within section 425.16, citing allegations that the defendants conspired to delay, avoid, and obstruct payment on bills and lien claims. These activities, they contend, had nothing to do with petitioning the WCAB. Plaintiffs cite paragraph 40 of their complaint, which alleges that defendants combined to "contest, object to, litigate, delay payment on and/or not pay at all on Plaintiffs' valid and proper bills and lien claims for medical treatment and/or services provided to Employers' Applicants."

Paragraph 40 further alleges defendants conspired to:

"(b) limit or reduce the amount Defendants would pay on valid and proper bills and lien claims for Employers' Applicants who Physicians had provided medical services to; [¶] . . . [¶]

"(e) agree to only pay a certain price, unilaterally agreed upon by Defendants, on Plaintiffs' valid and proper bills and lien claims for Employers' Applicants who Physicians had provided medical services to;

"(f) establish or settle, between each Defendant, the payment for valid and proper bills and lien claims for Employers' Applicants who Physicians had provided medical services to, so as to directly or indirectly affect free and unrestricted competition between Plaintiffs and, among others, those medical treatment and service providers, other than Physicians, which Defendants preferred treat and provide medical services to Employers' Applicants."

Plaintiffs argue that none of these allegations refer to petitioning the WCAB, but instead address delay and avoidance of payment to Premier, activity which is not protected and therefore does not fall within the ambit of section 425.16.

■ The moving defendants have the better argument. In the context of determining whether a case comes within section 425.16, the Supreme Court has held that the constitutional right to petition includes the basic act of seeking administrative action. (*Briggs v. Eden Council for Hope & Opportunity, supra,* 19 Cal.4th at p. 1115.) We applied this principle in *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777 [54 Cal.Rptr.2d 830]. In that case, the plaintiff sued for libel and interference with an economic relationship in a dispute which arose because the defendant intended to file a complaint with the California Attorney General seeking an investigation of whether the plaintiff had honored its contractual obligation to pay the proceeds of a celebrity recording to charity. The factual predicate of the lawsuit was a letter the defendant had sent to various celebrities who had participated in the recording that sought support for a complaint defendant initiated to the Attorney General. (*Dove,* at p. 780.)

We held the action fell within the ambit of the anti-SLAPP statute because the defendant's communication "raised a question of public interest: whether money designated for charities was being received by those charities. The communication was made in connection with an official proceeding authorized by law, a proposed complaint to the Attorney General seeking an investigation. 'The constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action.' [Citation.] Just as

communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege[,] we hold that such statements are equally entitled to the benefits of section 425.16. [Citation.]" (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman, supra*, 47 Cal.App.4th at p. 784.)

In *Dickens v. Provident Life & Accident Ins. Co.* (2004) 117 Cal.App.4th 705, 714 [11 Cal.Rptr.3d 877], we held that contact with the executive branch of government and its investigators about a potential violation of law was preparatory to commencing an official proceeding authorized by law—a criminal prosecution for mail fraud—and thus came within the ambit of the anti-SLAPP law. A similar result was reached in *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993 [113 Cal.Rptr.2d 625], which concerned a lawsuit based on the defendants' filing of a complaint with the Securities and Exchange Commission. The issue was whether the complaint fell within the ambit of section 425.16. Finding that the purpose of the complaint was to solicit an investigation by that agency, the *ComputerXpress* court had "little difficulty in concluding that the filing of the complaint qualified at least as a statement before an official proceeding" under section 425.16, subdivision (e). (*ComputerXpress* at p. 1009.) Communications to an administrative agency designed to prompt action by that agency come within the definition of an official proceeding, even though they *"may precede the initiation of formal proceedings."* (*ComputerXpress, Inc. v. Jackson, supra*, 93 Cal.App.4th at p. 1009, citing *Slaughter v. Friedman* (1982) 32 Cal.3d 149, 156 [185 Cal.Rptr. 244, 649 P.2d 886] [in context of Civil Code section 47 privilege], and *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 30 [61 Cal.Rptr.2d 518] [Civil Code section 47 privilege applied to communications or complaints by citizens to public officials or authorities charged with investigating, prosecuting or remedying alleged wrongdoing].)

In their brief and at oral argument, Plaintiffs argued that the complaint was not based on defendants' handling of liens and claims through the workers' compensation system. Instead, they contended it is based on anticompetitive activity that occurred outside the normal claims handling process. Plaintiffs cited declarations to the effect that Lynn Devine, who represented defendants CIGA, ICW, and Elite Personnel Services before the WCAB, encouraged third parties to refuse to honor settlements reached with Plaintiffs in cases not covered by the stay.

The problem with this contention is that there is no allegation in the complaint that defendants conspired to stop third parties from honoring settlements of Plaintiffs' liens and claims. For example, paragraph 36 alleges that in an effort to gain an economic advantage over Plaintiffs, and to impede their business, "Defendants, in a concerted conspiracy with each other,

banded together to contest, object to, litigate, delay payment on and/or not pay at all on valid, proper and lawful billings and lien claims. Said conspiratorial acts by Defendants were perpetrated with the knowledge that such concerted activity would result in an overwhelmingly negative effect on Plaintiffs' ability to collect on services rendered to Employers' Applicants, thereby resulting in extreme pressure on Plaintiffs to concede to Defendants wrongful and unlawful attempts to lower Plaintiffs' billings and lien claims for Employers' Applicants."

Paragraph 40 alleges that defendants acted in combination to "object to, litigate, delay payment on and/or not pay at all on Plaintiffs' valid and proper bills and lien claims." Seven subparagraphs detail defendants' allegedly improper behavior, but do not allege that defendants improperly persuaded third parties to refuse to pay settlements which had previously been agreed upon.

If we were reviewing a ruling on a demurrer, the rules of liberal construction might suggest that Plaintiffs be allowed to amend their complaint to allege the claims regarding the impact of defendants' conspiracy on third-party settlement payments. On review of an anti-SLAPP motion to strike however, the standard is akin to that for summary judgment or judgment on the pleadings. We must take the complaint as it is.

"In order to establish a probability of prevailing on the claim (§ 425.16, subd. (b)(1)), a plaintiff responding to an anti-SLAPP motion must ' "*state*[] and substantiate[] a legally sufficient claim." ' (*Briggs v. Eden Council for Hope & Opportunity*[, *supra*,] 19 Cal.4th 1106, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564], quoting *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 412 [58 Cal.Rptr.2d 875, 926 P.2d 1061].) Put another way, the plaintiff 'must demonstrate that the *complaint is both legally sufficient* and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' (*Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 548 [46 Cal.Rptr.2d 880]; accord, *Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260, 274 [105 Cal.Rptr.2d 674].) In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the

motion defeats the plaintiff's attempt to establish evidentiary support for the claim. (*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1365 [102 Cal.Rptr.2d 864].)" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733], italics added.)

Applying these principles and confining our review to the conduct alleged in the complaint, we are satisfied that the gravamen of Plaintiffs' action arises from the activity of defendants in litigating lien claims through the workers' compensation process. This includes communications preceding the filing of the petitions for consolidation. The entire complaint falls within the scope of section 425.16. Section 425.16, subdivision (e) states that an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) . . . (2) any written or oral statement or writing *made in connection with an issue under consideration or review by [an] executive . . . body, or any other official proceeding authorized by law.*" (Italics added.) All of the acts alleged fall within this category. The moving defendants satisfied their initial burden under section 425.16, taking us to the second step of the analysis.

## II

█ The second step usually requires that Plaintiffs " ' "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' [Citations.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88–89 [124 Cal.Rptr.2d 530, 52 P.3d 703].) Here the focus of the special motion to strike was on affirmative defenses raised by the moving defendants. If defendants have an affirmative defense to a cause of action, they may assert it in the special motion to strike. "[A]lthough section 425.16 places on the plaintiff the burden of substantiating its claims, a defendant that advances an affirmative defense to such claims properly bears the burden of proof on the defense. (See, e.g., *Mann*[, *supra*,] 120 Cal.App.4th at p. 109 [noting, in the context of a [section] 425.16 analysis, that defendants had failed to carry their burden of establishing their allegedly defamatory statements were protected under the conditional privilege of Civil Code [section] 47, [subdivision] c].)" (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 676 [35 Cal.Rptr.3d 31].)

Plaintiffs argue that because their complaint is not directed at protected activity, defendants cannot demonstrate a probability of prevailing on the merits of their affirmative defenses. They rely on *Mann, supra*, 120 Cal.App.4th at page 106, which held that a plaintiff need only show a probability of prevailing on any part of its claim; the plaintiff need not substantiate all theories presented within a single cause of action. The *Mann*

court concluded that reviewing courts need not engage in the time-consuming task of determining whether the plaintiff can substantiate all theories presented within a single cause of action and need not parse the cause of action so as to leave only those portions it has determined have merit. (*Ibid.*)

Here, however, defendants invoke affirmative defenses which apply to all of Plaintiffs' claims. Defendants bear the burden of establishing a probability of prevailing on those defenses. We turn to an examination of the affirmative defenses.

## III

Moving defendants argue that all of Plaintiffs' causes of action are barred either by the absolute litigation privilege of Civil Code section 47, subdivision (b), or by the broader *Noerr-Pennington*[5] doctrine. Because we conclude that the *Noerr-Pennington* issue is dispositive, we do not reach the Civil Code section 47 issue.

■ The *Noerr-Pennington* doctrine, which arose in the context of antitrust law, holds that "[t]hose who petition government for redress are generally immune from antitrust liability." (*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.* (1993) 508 U.S. 49, 56 [123 L.Ed.2d 611, 113 S.Ct. 1920].) In *Noerr, supra,* 365 U.S. at page 137, the Supreme Court concluded that the Sherman Antitrust Act does not punish political activity through which the people "freely inform the government of their wishes."

The *Noerr-Pennington* doctrine was extended by the Supreme Court in *California Transport v. Trucking Unlimited* (1972) 404 U.S. 508, 510 [30 L.Ed.2d 642, 92 S.Ct. 609] to "the approach of citizens . . . to administrative agencies . . . and to courts." It has been applied to commercial speech and competitive activity, as well as to anticompetitive activity. (*Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 21–22 [43 Cal.Rptr.2d 350] (*Ludwig*).) The immunity applies to "virtually any tort, including unfair competition and interference with contract." (*Id.* at p. 21, fn. 17.) *Noerr-Pennington* immunity also has been applied to Cartwright Act (*Blank v. Kirwan* (1985) 39 Cal.3d 311 [216 Cal.Rptr. 718, 703 P.2d 58]) and RICO claims. (*International Broth. of Teamsters v. Philip Morris* (7th Cir. 1999) 196 F.3d 818, 826.) In *Ludwig,* the court explained: "Obviously, ' "the principle of constitutional law that bars litigation arising from injuries received as a consequence of First Amendment petitioning activity [should be applied], regardless of the underlying cause of action asserted by the plaintiffs."

---

[5] *Eastern R. Conf. v. Noerr Motor* (1961) 365 U.S. 127 [5 L.Ed.2d 464, 81 S.Ct. 523] (*Noerr*); *Mine Workers v. Pennington* (1965) 381 U.S. 657 [14 L.Ed.2d 626, 85 S.Ct. 1585].

[Citation.] "[T]o hold otherwise would effectively chill the defendants' First Amendment rights." [Citation.]' " (*Ludwig, supra*, 37 Cal.App.4th at p. 21, fn. 17, quoting *Hi-Top Steel Corp. v. Lehrer* (1994) 24 Cal.App.4th 570, 577–578 [29 Cal.Rptr.2d 646].)

Defendants argue the *Noerr-Pennington* doctrine applies to their alleged conduct before the WCAB. They point out that this action was filed after they objected to and successfully petitioned for consolidation of Plaintiffs' lien claims before the WCAB. All of the actions which form the basis for the complaint took place in anticipation of, or during, proceedings before the WCAB. Each of Plaintiffs' causes of action incorporates the allegations of the previous causes of action. As we have discussed, these allegations are based on the moving defendants' exercise of their right to petition the WCAB to stay all claims involving Plaintiffs in order to obtain an adjudication of the defendants' claims against Plaintiffs. We conclude that the defendants have demonstrated that the *Noerr-Pennington* immunity applies to each cause of action.

There is an exception to *Noerr-Pennington* immunity: it does not apply to sham activities. (*Wilson v. Parker, Covert & Chidester, supra*, 28 Cal.4th 811, 820.) But Plaintiffs do not rely on that exception here and present no evidence establishing its applicability. In their reply brief, Plaintiffs address related arguments made by defendants under the litigation privilege, Civil Code section 47. But they fail to address *Noerr-Pennington* and the cases cited by defendants in support of their argument that this doctrine bars the complaint. They provide a broad statement that the litigation privilege (Civ. Code, § 47) applies only to communications and not to actions or other noncommunicative conduct. But unlike Civil Code section 47, the *Noerr-Pennington* doctrine extends to conduct in exercise of the right to petition, as well as to communications.

As we have discussed, the gravamen of the complaint is defendants' successful activity in petitioning the WCAB to stay processing of workers' compensation bills and lien claims by Plaintiffs. Defendants have established that these activities were taken in the exercise of their First Amendment right to petition and so fall within the *Noerr-Pennington* doctrine. Plaintiffs have not addressed this defense and have not invoked the sham activity exception. We conclude the moving defendants established a probability of prevailing on this defense and that the trial court erred in denying the moving defendants' special motion to strike under section 425.16. Moving defendants are entitled to their reasonable attorney fees on appeal. (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman, supra*, 47 Cal.App.4th 777, 785.)

## DISPOSITION

The order of the trial court denying the special motion to strike is reversed. Moving defendants are to have their costs and fees on appeal.

Hastings J., and Curry, J., concurred.

A petition for a rehearing was denied February 22, 2006, and respondents' petition for review by the Supreme Court was denied May 10, 2006, S142038. George, C. J., did not participate therein.