Filed 6/18/15  Shenoi Koes v. Bank of America CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SHENOI KOES LLP,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION,<br><br>    Defendant and Appellant. | B259485<br><br>(Los Angeles County<br> Super. Ct. No. BC543708) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory W. Alarcon, Judge.  Affirmed.

Orrick, Herrington & Sutcliffe, Leah L. Spero, Catherine Y. Lui and Michael D. Weil for Defendant and Appellant.

Michael S. Overing, APC and Michael S. Overing for Plaintiff and Respondent.

Defendant and appellant Bank of America appeals from the trial court's denial of its special motion to strike under Code of Civil Procedure section 425.16 (section 425.16), the so-called anti-SLAPP statute.[1] We conclude, as did the trial court, that the challenged cause of action does not arise from protected activity and therefore affirm the denial.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying complaint in this case arose from Shenoi Koes' claim that Eileen Foster, a former executive with Bank of America, did not pay an attorney fee lien for legal services performed by Shenoi Koes during mediation proceedings between Foster and Bank of America. Shenoi Koes sued Foster, Bank of America, and Foster's other attorneys after Bank of America settled with Foster but did not pay Shenoi Koes' attorney fee lien.

Foster filed a whistleblower complaint with the United States Department of Labor Occupational Safety and Health Administration (OSHA) in 2008 when she was fired by Bank of America after reporting mortgage fraud. Foster was represented in the OSHA proceedings by Matthew L. Tonkovich, but she retained Shenoi Koes to represent her during mediation with Bank of America. In December 2010, Shenoi Koes represented Foster during mediation with Bank of America, but the mediation did not result in a settlement.

The contingency fee agreement between Foster and Shenoi Koes, which was signed in October 2010, stated that Foster retained Shenoi Koes to represent her "only in settlement negotiations and a mediation." The agreement provided that Shenoi Koes would be "compensated at 25% of the value of the gross recovery.

---

[1] SLAPP is an acronym for "strategic lawsuit against public participation." (*Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 280.)

2

[¶] . . . The gross recovery includes the entire value of any settlement, if there is one."

The agreement further provided that, if Foster terminated Shenoi Koes, Shenoi Koes "has and continues to maintain a security interest in the case and is entitled to recover the reasonable value of [Shenoi Koes'] services and costs from any recovery or award in this matter at any time, whether from an OSHA award or any other settlement or judgment." In addition, Foster agreed that Shenoi Koes "has and will continue to have a lien against any recovery or award in the OSHA proceeding or any other action whether or not [Shenoi Koes] is still representing [Foster] at the time such an award is made, and regardless of who is representing [Foster] when any recovery is had, and that [Shenoi Koes'] security interest will remain intact even if the attorney Client relationship is terminated."

In March 2011, a few months after the unsuccessful mediation, Shenoi Koes sent Foster an email to ask about the status of their retention. The email stated, in part: "Once you notified us on February 20th . . . that [Bank of America] had terminated the mediation . . . it confirmed for us that we are beyond the terms of our retention, as was carefully laid out in our Contingency Fee Contract . . . . [¶] We will need to discuss this development, and if we reach agreement to continue to represent you, to formulate a settlement proposal that is now outside of any mediation." The email further stated, "Alternatively, . . . pursuant to the last sentence of the first full paragraph of the Contingency Fee Contract, our time 'can be submitted by [your] current lawyer in the OSHA proceeding, for purposes of increasing any award of attorneys' fees in the OSHA proceeding.'" Foster did not retain Shenoi Koes for any further representation. However, in April 2011, Foster asked Shenoi Koes to submit information about its legal fees to Tonkovich for submission in the OSHA proceeding. Foster submitted Allan A. Shenoi's

3

declaration detailing attorney fees and costs of $182,014.75 in her OSHA proceeding.

In August 2011, Shenoi Koes sent a letter to Bank of America's counsel, stating that Shenoi Koes "hereby claims contractual and equitable liens in presently unliquidated amounts on any sums or other consideration recovered in the OSHA or any related or other actions by Eileen Foster, whether by settlement or judgment." Also in August 2011, Foster asked Shenoi Koes to "accept a cap of $200,000 in attorneys' fees and costs as [Shenoi Koes'] lien," but Shenoi Koes refused.

In September 2011, OSHA completed its investigation and issued its findings, ordering Bank of America to pay Foster back wages, compensatory damages, and attorney fees. Bank of America objected to the findings and requested a hearing before an Administrative Law Judge (ALJ). (See 29 C.F.R. § 1980.106, subd. (a).) In December 2012, the ALJ approved a confidential settlement agreement between Foster and Bank of America.

In March 2014, Shenoi Koes sent an email to Tonkovich, stating that Shenoi Koes "ha[d] a lien in the case" and asking for an update on the status of the case. Tonkovich referred Shenoi Koes to Foster's new counsel, Thad Guyer, who informed Shenoi Koes that it did not have a "meritorious lien."

Shenoi Koes filed a complaint against Foster, Bank of America, Tonkovich, Guyer, and various Does. Shenoi Koes asserted causes of action against Bank of America for conversion, intentional interference with contractual relations, negligent interference with prospective economic relations, quantum meruit, and constructive trust.

Bank of America filed an anti-SLAPP motion arguing, inter alia, that Shenoi Koes' claims arose from protected activity pursuant to section 425.16 because the

4

claims were based on Bank of America's conduct related to the settlement agreement. In its opposition to the motion, Shenoi Koes argued that its claims were not based on Bank of America's protected activity in judicial proceedings, but on its failure to include Shenoi Koes as a payee on the settlement check despite its knowledge of Shenoi Koes' lien.

The trial court found that the anti-SLAPP statute did not apply because the gravamen of the complaint was the nonpayment of an attorney fee lien, not protected activity such as entering into a settlement agreement. The court further stated that, assuming the statute did apply, "[p]laintiff's declaration and exhibits evidence at least minimal merit." The court therefore denied the anti-SLAPP motion.

## DISCUSSION

Bank of America contends that the trial court erred in denying its motion to strike because Shenoi Koes' complaint is based on Bank of America's conduct in the settlement proceedings with Foster. Shenoi Koes contends, and the trial court found, that the gravamen of the complaint was not Bank of America's conduct in the settlement proceedings, but the "nonpayment of an attorney fee lien." We agree with the trial court.

I. *Legal Standards*

"Section 425.16 provides an expedited procedure for dismissing lawsuits that are filed primarily to inhibit the valid exercise of the constitutionally protected rights of speech or petition. [Citations.]" (*Albanese v. Menounos* (2013) 218 Cal.App.4th 923, 928 (*Albanese*).) "Section 425.16 provides, inter alia, that 'A cause of action against a person arising from any act of that person in furtherance

5

of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).) 'As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . .' (*Id.*, subd. (e).)" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 87-88 (*Navellier*).)

"A special motion to strike a complaint under section 425.16 involves two steps. First, the moving party has the initial burden of making a threshold showing that the challenged cause of action is one arising from a protected activity. (§ 425.16, subd. (b)(1).) In order to meet this burden, the moving party must show the act underlying the challenged cause of action fits one of the categories described in section 425.16, subdivision (e). [Citation.] [¶] Once the moving party has made the threshold showing, the burden in step two shifts to the opposing party. Under step two of the statutory analysis, the opposing party must demonstrate a probability of prevailing on the claim. (§ 425.16, subd. (b)(1).) A cause of action is subject to dismissal under the statute only if both steps of the anti-SLAPP analysis are met." (*Albanese*, *supra*, 218 Cal.App.4th at p. 928.)

"In deciding whether the initial 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' [Citation.]" (*Navellier*, *supra*, 29

6

Cal.4th at p. 89.) "The principal thrust or gravamen of the claim determines whether section 425.16 applies. [Citation.]" (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 136 Cal.App.4th 464, 472.) "The 'critical consideration is what the cause of action is 'based on.' [Citation.]" (*Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 153-154 (*Thayer*).)

"In an appeal from an order granting or denying a motion to strike under section 425.16, the standard of review is de novo. [Citation.] In considering the pleadings and supporting and opposing declarations, we do not make credibility determinations or compare the weight of the evidence. Instead, we accept the opposing party's evidence as true and evaluate the moving party's evidence only to determine if it has defeated the opposing party's evidence as a matter of law. [Citation.]" (*Albanese*, *supra*, 218 Cal.App.4th at pp. 928-929.)

According to Bank of America, Shenoi Koes' claims are based solely on the allegations that Bank of America submitted a settlement agreement to the ALJ, hid the settlement from Shenoi Koes, and compromised its dispute with Foster. Bank of America then states, with no explanation, that all of its alleged activities are protected by the anti-SLAPP statute. We disagree.

The fact that the complaint refers to the settlement agreement does not establish that it is based on protected activity. "[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. [Citation.] Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.]" (*Navellier*, *supra*, 29 Cal.4th at p. 89; see also *Optional Capital, Inc. v. DAS Corp.* (2014) 222 Cal.App.4th 1388, 1399 ["The mere fact that a lawsuit was filed after the defendant engaged in

7

protected activity does not establish the complaint *arose from* protected activity under the statute because a cause of action may be triggered by protected activity without arising from it. [Citation.]"] (*Optional Capital*).) Despite Bank of America's efforts to characterize Shenoi Koes' claims as arising out of protected activity during the settlement negotiations, the pleadings and supporting and opposing declarations establish that Shenoi Koes' claims are not based on protected activity relating to the settlement agreement but on the nonpayment of Shenoi Koes' alleged attorney fee lien.

The causes of action against Bank of America are based on the following allegations in the complaint. Foster retained Shenoi Koes and created an attorney lien through the fee agreement she signed. Foster "judicially admitt[ed] and reaffirm[ed] the existence and validity of [Shenoi Koes'] lien" by requesting and submitting to OSHA a declaration detailing Shenoi Koes' fees and costs of $182,014.75. Foster again acknowledged the existence of the lien by asking Shenoi Koes to accept a cap of $200,000 in attorneys' fees and costs, but Shenoi Koes refused and subsequently "gave formal notice of its lien to [Bank of America]." The complaint further alleged that "OSHA issued an award in favor of . . . FOSTER and ordered [Bank of America] to pay FOSTER 'attorney fees in the amount of $229,364.00." In addition, Bank of America knew that Shenoi Koes' "recovery was tied to FOSTER's contingent recovery, but hid from [Shenoi Koes] the occurrence of that contingency" by submitting a proposed confidential settlement agreement with Foster to the ALJ. In sum, the complaint alleges that Shenoi Koes performed legal services for Foster, resulting in an attorney fee lien which Foster acknowledged she owed. Shenoi Koes told Bank of America about the lien, but when Bank of America settled Foster's claim, it did not pay Shenoi

8

Koes' lien. The principal thrust of the claim accordingly is the nonpayment of Shenoi Koes' lien.

The causes of action alleged against Bank of America confirm that the gravamen of Shenoi Koes' claim is not protected activity but the nonpayment of the attorney fee lien. The conversion cause of action alleged that Bank of America (and the other defendants)[2] "have converted, and continue to convert, to their own use property belonging to [Shenoi Koes], including, but not limited to, attorney fees and costs. . . . [Shenoi Koes] demanded, before commencing this action, that [Bank of America] deliver this property and other benefits to [Shenoi Koes]. To date, [Bank of America] ha[s] refused to deliver each and every one of the items."

The intentional interference with contractual relations cause of action alleged that Bank of America knew about Shenoi Koes' contract with Foster and that Bank of America's conduct "impaired [Shenoi Koes'] rights under its lien and/or intentionally induced a breach of contract and/or intentionally interfered with and/or prevented performance and/or made performance of [Shenoi Koes'] contract with FOSTER more expensive or difficult." The negligent interference with prospective economic relations cause of action alleged that Shenoi Koes and Foster "had been in an economic relationship that probably would have resulted in a future economic benefit to [Shenoi Koes]," and that Bank of America interfered with that relationship.

The complaint further alleged that Bank of America wrongfully detained Shenoi Koes' compensation within the meaning of Civil Code sections 2223 and 2224. Shenoi Koes therefore sought "a constructive trust encompassing . . . [Shenoi Koes'] unpaid compensation and unpaid expenses necessarily incurred in

---

[2] All these causes of action are alleged as to the other defendants as well as Bank of America.

9

connection with services rendered to FOSTER." Finally, Shenoi Koes alleged unjust enrichment by Bank of America, stating that Bank of America "unjustly benefited, and continue[s] to unjustly benefit, from labor, efforts, and services provided by [Shenoi Koes] because [Bank of America] failed to pay [Shenoi Koes] compensation and reimbursement for expenses necessarily incurred in connection with services rendered to FOSTER." All the causes of action are based on Shenoi Koes' failure to receive payment for its legal services.

The supporting and opposing declarations similarly establish that the complaint is not based on protected activity.[3] In support of its anti-SLAPP motion, Bank of America submitted a declaration from Foster. Foster's declaration merely set forth the facts regarding her retention of Shenoi Koes for mediation, which did not result in a settlement, and the OSHA proceedings. Her only statements regarding the settlement negotiations were the following: "I did not re-engage in settlement discussions with the Bank until a few weeks prior to a scheduled October 2012 trial before the [ALJ]. My then current lawyer and the Bank's lawyer engaged in direct settlement negotiations that did not arise from any mediation or follow-up to any mediation."

Shenoi Koes submitted a declaration from Allen A. Shenoi in support of its opposition to the anti-SLAPP motion.[4] Similar to Foster's, Shenoi's declaration

---

[3]    Bank of America argues repeatedly that Shenoi Koes is bound solely by the allegations in the pleadings. However, this is not accurate. As stated above, in deciding whether the challenged causes of action arise from protected activity, we consider not only the pleadings, but the supporting and opposing declarations. (*Navellier, supra*, 29 Cal.4th at p. 89; *Albanese, supra*, 218 Cal.App.4th at p. 928.)

[4]    We disagree with Bank of America's contention that the trial court erroneously relied on Shenoi Koes' "recasting of its claims in its opposition to the anti-SLAPP motion." There is no evidence in the record of this alleged error. Rather than "recasting"

10

reiterated the facts that were alleged in the complaint: the contingency fee contract between Foster and Shenoi Koes; the legal services Shenoi Koes performed for Foster; Foster's submission of Shenoi Koes' fees in the OSHA proceeding; Foster's request that Shenoi Koes accept a cap of $200,000 in attorney fees and costs; Shenoi Koes' written notice of its lien to Bank of America; and OSHA's order that Bank of America pay Foster $229,364 in attorney fees. In addition, Shenoi stated that Tonkovich informed him that the majority of the attorney fees ordered by OSHA were for Shenoi Koes' time.

Bank of America relies on *Thayer*, *supra*, but that case is distinguishable. In *Thayer*, the plaintiff sued attorneys who handled a class action (in which the plaintiff was not a party) based on the attorneys' handling of the settlement proceeds. In contrast to the instant case, where the complaint is based solely on Shenoi Koes' claim that its attorney fee lien was not paid as part of the settlement agreement, the complaint in *Thayer* made allegations regarding the defendant attorneys' conduct during litigation and settlement of the class action. For example, the complaint alleged that, during the litigation, the plaintiff's spouse (a "very experienced attorney") informed the defendant attorneys of an entity whom they had not named. (*Thayer*, *supra*, 207 Cal.App.4th at p. 145.) The complaint further alleged that the plaintiff's spouse was not given the right to make "'"substantive decisions in the handling" of the[] actions,'" and that he asked for but did not receive either a breakdown of the disbursements and costs or a list of owners who had not approved the settlement. (*Id.* at pp. 148-149.) The plaintiff further complained of decisions to hold the settlement funds in trust and to require clients to affirmatively opt out of a "Fraud Fund" to be used in related criminal

Shenoi Koes' claims, the declaration submitted in support of the opposition to the anti-SLAPP motion reiterates the facts alleged in the complaint.

11

proceedings. (*Id.* at p. 150.) The gravamen of the complaint therefore was not merely the plaintiff's failure to receive payment as a result of the settlement. Instead, the complaint was "'based on'" how the defendant attorneys conducted the settlement proceedings. (*Id.* at p. 154.)

The facts of this case thus are analogous to *California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032 (*California Back Specialists*), in which the plaintiff medical group provided medical treatment to the defendant attorney's clients pursuant to liens on their personal injury actions. After the personal injury actions were resolved, the attorney disbursed the proceeds without informing the medical group or satisfying the medical liens. The medical group sued, alleging that the attorney "failed to notify it when the personal injury cases were complete, and disbursed the proceeds from those cases without withholding the funds owed to [it], in violation of the liens." (*Id.* at p. 1035.) The defendant filed a special motion to strike, contending that his conduct was protected activity because he disbursed the funds as an attorney and was representing his clients. On appeal, the court affirmed the trial court's denial of the anti-SLAPP motion, stating that "[n]ot all attorney conduct in connection with litigation, or in the course of representing clients, is protected by section 425.16. [Citations.]" (*Id.* at p. 1037.)

*Optional Capital* presented a similar situation. In that case, after "an extremely tangled thicket of legal proceedings in both state and federal court, as well as in Switzerland," the plaintiff corporation and its attorneys sued the defendant to recover money the defendant allegedly looted from the corporate plaintiff. (*Optional Capital*, *supra*, 222 Cal.App.4th at p. 1392.) The trial court granted the defendant's special motion to strike, on the basis that the complaint for conversion and fraudulent transfer arose from a settlement agreement that resulted

12

in the release of funds from a Swiss bank. The appellate court reversed, reasoning that the plaintiffs were not suing because of the settlement, but in order to recover money wrongfully obtained by the defendant. (*Id.* at pp. 1400-1401.) The court found that the complaint was not based on the protected activity of the settlement agreement because "[t]he only connection between the settlement . . . and [the plaintiffs'] claims . . . is that the settlement was used as a device to permit [the defendant] to persuade the Swiss government to release the funds, thereby depriving [the corporate plaintiff] of funds to satisfy its judgment." (*Id.* at p. 1401.)

Similarly, in *Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381 (*Coretronic*), the plaintiffs sued their former law firm after discovering that the law firm was representing the plaintiffs' adversary in an unrelated lawsuit. The plaintiffs alleged claims arising from the law firm's improperly obtaining confidential information from the plaintiffs that would benefit their adversary. The defendant law firm filed a motion to strike, arguing that the claims arose from its representation of its other clients. However, the trial court denied the motion, and the appellate court affirmed, finding that the complaint did not arise from protected activity. (*Id.* at p. 1385.) The court agreed with the plaintiffs that the basis of their claims was "the *fact* of this conflicting representation, and not any litigation-related statements or conduct." (*Id.* at p. 1389.) The court thus concluded that "the complaint does not target litigation-related activity." (*Ibid.*)

As in *California Back Specialists*, *Optional Capital*, and *Coretronic*, the allegations in Shenoi Koes' complaint may have been "triggered by protected activity" (the settlement between Bank of America and Foster). (*Optional Capital*, *supra*, 222 Cal.App.4th at p. 1399.) However, the complaint does not *target* the protected activity, but only the nonpayment of Shenoi Koes' lien. (*Coretronic*,

*supra*, 192 Cal.App.4th at p. 1389.)  The claims therefore do not *arise from* the protected activity within the meaning of the anti-SLAPP statute.

We acknowledge the statement in *Thayer* that "legal advice and settlement made in connection with litigation are within section 425.16, and may protect defendant attorneys from suits brought by third parties on any legal theory or cause of action 'arising from' those protected activities.  [Citations.]"  (*Thayer*, *supra*, 207 Cal.App.4th at p. 154.)  However, "[p]rotected conduct which is merely *incidental* to the claims does not fall within the ambit of section 425.16.  [Citations.]"  (*Coretronic*, *supra*, 192 Cal.App.4th at p. 1388.)

Here, the settlement agreement was merely the "device" that permitted Foster, but not Shenoi Koes, to be paid.  (*Optional Capital*, *supra*, 222 Cal.App.4th at p. 1401.)  The settlement agreement itself and the conduct related to the settlement are incidental to Shenoi Koes' claim that its lien was unpaid.  Thus, contrary to Bank of America's contentions, "[a]ny assertedly protected activity is not the root of the complaint; it is merely the setting in which the claims arose." (*Coretronic*, *supra*, 192 Cal.App.4th at p. 1392.)

"[T]he moving defendant in a SLAPP action has the initial burden of showing the plaintiff's challenged cause of action *arose from* an act by the defendant in furtherance of its right of petition or free speech.  [Citation.]" (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 907.)  Bank of America's payment to Foster without paying Shenoi Koes is not an act in furtherance of Bank of America's right of petition or free speech.  (See *Navellier*, *supra*, 29 Cal.4th at p. 92 ["The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability – and whether that activity constitutes protected speech or

14

petitioning."].)  Bank of America therefore has not met its initial burden of showing the complaint arose from protected activity.

Because we conclude that Bank of America has failed to make a threshold showing that the claims arise from protected activity, we need not consider whether Shenoi Koes has demonstrated a probability of prevailing on the claim. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80-81; *Coretronic*, *supra*, 192 Cal.App.4th  at p. 1393; *California Back Specialists*, *supra*, 160 Cal.App.4th at p. 1037.)


**DISPOSITION**

The judgment is affirmed.  Respondent is entitled to costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



WILLHITE, J.



We concur:



EPSTEIN, P. J.                    MANELLA, J.


15