Filed 8/7/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LINDSAY ALBANESE, | B240866 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC468404) |
| v. | |
| MARIA MENOUNOS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Deirdre Hill, Judge.  Affirmed.

Freedman & Taitelman, Bryan J. Freedman, and Jonathan M. Genish for Defendant and Appellant.

Berra Connelly, Paul S. Berra, and Brigit K. Connelly for Plaintiff and Respondent.

Plaintiff and respondent Lindsay Albanese, a celebrity stylist and style expert, sued defendant and appellant Maria Menounos, a television personality, for defamation and other torts. Menounos moved to strike the complaint under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1] The trial court denied the motion on the ground the disputed statements did not involve a public issue or an issue of public interest. (§ 425.16, subd. (e)(4).) In this appeal from the order of denial, we reject Menounos's contentions and affirm.

## BACKGROUND

### I. The Complaint's Allegations

Albanese's complaint alleged as follows: Albanese worked at NBC from September 2005 to December 11, 2009, as a stylist for Menuonos on the *Access Hollywood* set. After Albanese's employment with NBC ended, she saw Menounos at a June 3, 2011 "event at the MTV Gift Suite at the W Hotel in Hollywood." At that event, "Menounos aggressively demanded to speak with" Albanese, who was standing next to "Greg Dava, an employee of the producer of the event." "In front of peers, colleagues, and prospective business clients, Defendant Menounos loudly accused [Albanese] of stealing by claiming, 'Dolce and Gabbana won't lend to me anymore because they said you never returned anything.'" Albanese replied that the accusation was "a lie." A few days later, "Greg Dava informed [Albanese] that immediately after the scene at the W Hotel, [Menounos] told Greg Dava that Plaintiff Albanese had been *stealing from [Menounos]* when [Albanase] was performing services for [Menounos]."

Based on the above allegations, Albanese sued Menounos for defamation, tortious interference with prospective economic advantage, and intentional infliction of emotional distress. The complaint alleged the defamatory statements were made with express

---

[1] SLAPP is the acronym for Strategic Lawsuit Against Public Participation. All further undesignated statutory references are to the Code of Civil Procedure.

2

malice, actual knowledge of their falsity, and specific intent to injure Albanese's reputation and employment. The complaint sought damages for the injuries to Albanese's "personal, business and professional reputation," "embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and economic loss in the form of lost wages and future earnings."

## II.     The Special Motion to Strike

Menounos moved to strike the complaint under the anti-SLAPP statute. She contended the complaint was subject to dismissal under the statute because it arises from "conduct in furtherance of the exercise of the constitutional right . . . of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).)

Menounos argued the alleged remarks (that Albanese had stolen from her and that "'Dolce and Gabbana won't lend to me anymore because they said you never returned anything'") constituted speech in connection with a public issue or an issue of public interest because (1) Albanese is in the public eye and (2) any statement concerning a person in the public eye qualifies as "speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).)

In order to show that Albanese is in the public eye, Menounos's attorney Vicki Greco stated in her declaration that: (1) Albanese refers to herself as "a 'Style Expert' and 'Celebrity Stylist'" in her "website, blog, twitter account and Facebook account"; (2) a Google search of Albanese's name revealed over 662,000 entries and "hundreds of articles, images, reports and advertisements about Albanese and her career as a Celebrity Stylist"; (3) Albanese appeared on the national television show "*Hair Battle Spectacular*"; (4) Albanese worked with nationally known figures such as Maria Menounos, Paula Abdul, and Lara Flynn Boyle; (5) Albanese dressed the female cast members of *Glee* and the contestants on *Bachelors* and *Bachelorettes*; and (6) Albanese served as "a celebrity stylist spokesperson for nationally recognized products such as *Seven for all Mankind* and *Famous Footwear Shoes*."

3

The trial court denied the motion under the first prong of the anti-SLAPP statute, stating in relevant part: "Defendant has failed to make the threshold showing that the causes of action arise from protected activity as defined under Section 425.16(e)(4). Defendant's argument is overly simplified—that solely because [Albanese] is a celebrity stylist and style expert, defendant's alleged statements are protected activity. However, plaintiff does not rise to the level of being in the 'public eye' for purposes of the statute. The cases cited by defendant are not helpful in establishing that she is in the 'public eye.' See Sipple v. Foundation for Nat. Progress (1999) 71 Cal.App.4th 226, 239 (nationally known political consultant who devised media strategy); Se[e]lig v. Infinity Broadcasting Corp. (2002) 97 Cal.App.4th 798 (former participant of a reality type television show who refused to appear on a local radio show and subjected herself to inevitable public scrutiny and potential ridicule by the public and media). None of the other factors apply. The alleged statement that plaintiff stole from defendant does not involve conduct that could affect large numbers of people beyond the direct participants. Further, the alleged statement does not involve a topic of widespread public interest. Simply put, defendant's alleged statements are not of public concern."**2**

Menounos timely appealed from the order denying her special motion to strike. (§§ 425.16, subd. (i), 904.1, subd. (a)(13).)


## DISCUSSION


Section 425.16 provides an expedited procedure for dismissing lawsuits that are filed primarily to inhibit the valid exercise of the constitutionally protected rights of speech or petition. (§ 425.16, subd. (a); *Digerati Holdings*, *LLC v. Young Money*

---

**2** Having denied the motion under the first prong of the statute, the trial court did not consider whether, under the second prong of the statute, Albanese had demonstrated a reasonable probability of success on the merits. Because we affirm the denial of the motion under the first prong of the statute, we do not discuss the evidence provided by the parties with regard to the merits.

4

*Entertainment*, *LLC* (2011) 194 Cal.App.4th 873, 883.) "The purpose of the anti-SLAPP statute is to encourage participation in matters of public significance and prevent meritless litigation designed to chill the exercise of First Amendment rights. (§ 425.16, subd. (a).) The Legislature has declared that the statute must be 'construed broadly' to that end. (*Ibid.*)" (*Digerati*, *supra*, at p. 883.)

A special motion to strike a complaint under section 425.16 involves two steps. First, the moving party has the initial burden of making a threshold showing that the challenged cause of action is one arising from a protected activity. (§ 425.16, subd. (b)(1).) In order to meet this burden, the moving party must show the act underlying the challenged cause of action fits one of the categories described in section 425.16, subdivision (e). (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 478.)

Once the moving party has made the threshold showing, the burden in step two shifts to the opposing party. Under step two of the statutory analysis, the opposing party must demonstrate a probability of prevailing on the claim. (§ 425.16, subd. (b)(1).) A cause of action is subject to dismissal under the statute only if both steps of the anti-SLAPP analysis are met.

In an appeal from an order granting or denying a motion to strike under section 425.16, the standard of review is de novo. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.) In considering the pleadings and supporting and opposing declarations, we do not make credibility determinations or compare the weight of the evidence. Instead, we accept the opposing party's evidence as true and evaluate the moving party's evidence only to determine if it has defeated the opposing party's evidence as a matter of law. (*Ibid.*)

## I.     The Public Interest Requirement of Section 425.16, Subdivision (e)(4)

Where, as here, the disputed statements were not made in connection with an official proceeding, the moving party must show the statements were made "in connection with a public issue or an issue of public interest." (§ 425.16, subds. (e)(3), (e)(4).) However, the statute does not define what constitutes "a public issue or an issue

5

of public interest." (*Ibid.*) The lack of definition "might be attributable to an assumption that ""no standards are necessary because [judges and attorneys] will, or should, know a public concern when they see it."" [Citations.]" (*D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1214-1215 (*D.C.*).) The lack of definition might also be attributable to the fact that the precise boundaries of a public issue are difficult to define. (*Rivero v. American Federation of State*, *County and Municipal Employees*, *AFL-CIO* (2003) 105 Cal.App.4th 913, 920 (*Rivero*).) In any event, given the lack of definition, "confusion and disagreement about what issues truly possess 'public' significance inevitably will arise, thus delaying resolution of section 425.16 motions and wasting precious judicial resources." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1122.)

Before analyzing Menounos's disputed statements, we briefly review a few cases in which the public issue requirement was discussed.

### A.     Cases in Which the Public Issue Requirement Was Met

*Hall v. Time Warner*, *Inc.* (2007) 153 Cal.App.4th 1337 (*Hall*) involved an invasion of privacy action filed by Marlon Brando's retired housekeeper, Blanche Hall, against the producers of the national television show *Celebrity Justice*. Brando, who won two Academy Awards for best actor, was famous "for his exploits on and off the screen and his at times tumultuous private life." (*Id.* at p. 1341.) Upon his death in 2004, Brando's "obituary appeared on the first page of major newspapers, including the New York Times, Los Angeles Times, and International Herald Tribune." (*Ibid.*) Accordingly, his death was a matter of public interest and when his will was probated, the news media reported that Brando had disinherited several heirs and named Hall as a beneficiary in his will. (*Id.* at p. 1342.) This revelation led the producers of *Celebrity Justice* to obtain a taped interview of Hall at her nursing home, which they broadcast on their show.

Hall denied authorizing either the interview or its broadcast and sued the producers for trespass, intrusion of seclusion, and other torts. The producers moved to

strike Hall's complaint under the anti-SLAPP statute. The trial court denied the motion under the first prong of the statute, citing the lack of any public interest in Hall, who "was neither a public figure nor a limited purpose public figure and did not become a public figure by virtue of her association with Brando's will." (*Hall*, *supra*, 153 Cal.App.4th at p. 1344.)

The appellate court in *Hall* reversed the denial of the anti-SLAPP motion. It concluded that because Brando was a well known public figure, Hall had become involved in an issue of public interest when she was named as a beneficiary in his will. (*Hall*, *supra*, 153 Cal.App.4th at p. 1348.) The court explained: "The public's fascination with Brando and widespread public interest in his personal life made Brando's decisions concerning the distribution of his assets a public issue or an issue of public interest. Although Hall was a private person and may not have voluntarily sought publicity or to comment publicly on Brando's will, she nevertheless became involved in an issue of public interest by virtue of being named in Brando's will. Defendants' television broadcast contributed to the public discussion of the issue by identifying Hall as a beneficiary and showing her on camera. We conclude that the acts from which the complaint arises . . . constituted conduct in furtherance of the defendants' right of free speech 'in connection with a public issue or an issue of public interest' (§ 425.16, subd. (e)(4))." (*Id.* at p. 1347.)

*Nygard*, *Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027 (*Nygard*) involved a magazine article concerning a Finnish celebrity, Peter Nygard, the chairman and founder of an international company with over 12,000 employees worldwide. After a Finnish magazine published an article critical of Nygard and his company, the company filed suit in California against the magazine and the former employee whose statements were quoted in the article. The company alleged a variety of tort and contract claims, including breach of employment contract and defamation.[3] The employee and the

---

**3** The disputed statements included the following: (1) the employee, Timo Uusi-Kerttula (Timo), was forced by the company to work like a slave without taking a break;

(Fn. continued.)

7

magazine moved to strike the company's complaint under the anti-SLAPP statute. The trial court granted the motion, finding the disputed statements were made in connection with an issue of interest to the Finnish public. It stated that both "the company and its founder, Nygard, 'are internationally known public figures who spend a great deal of money and effort to promote their business, success, wealth and lifetstyle.' Further, [the company] employ[s] over 12,000 employees worldwide. Thus, the court said, the statements made by Timo and published by the magazine involved highly visible public figures and issues of public interest." (*Id*. at p. 1034.)

In affirming the trial court's ruling in *Nygard*, we relied upon *Seelig v. Infinity Broadcasting Corp.*, *supra*, 97 Cal.App.4th 798 (*Seelig*), which held that a radio station's disparaging remarks about a contestant on the television program *Who Wants to Marry a Multimillionaire* were made in connection with an issue of public interest. We also relied upon *Sipple v. Foundation for Nat. Progress*, *supra*, 71 Cal.App.4th 226 (*Sipple*), which held that a magazine's revelation of domestic violence allegations against a well known political consultant, who had used domestic violence issues to his clients' advantage, was connected with an issue of public interest.

We concluded in *Nygard* that because the evidence had shown the Finnish public was interested in the magazine article regarding Nygard and his company, the public interest requirement of section 425.16, subdivision (e) had been met: "According to evidence introduced by defendants in support of their motions to strike, there is 'extensive interest' in Nygard—'a prominent businessman and celebrity of Finnish extraction'—among the Finnish public. Further, defendants' evidence suggests that there is particular interest among the magazine's readership in 'information having to do with Mr. Nygard's famous Bahamas residence which has been the subject of much publicity in

---

(2) Nygard wanted Timo to work around the clock; (3) Nygard watched the employees like a hawk; (4) Nygard did not want the employees to see a doctor when injured; (5) "dancer Aira Suvio-Samulin and her granddaughters were Christmas guests in Nygard's home in the Cayman Islands." (159 Cal.App.4th at p. 1033.)

8

Finland.'  The June 2005 article was intended to satisfy that interest." (*Nygard*, *supra*, 159 Cal.App.4th at p. 1042.)

B.      *Cases in Which the Public Issue Requirement Was Not Met*

*Rivero*, *supra*, 105 Cal.App.4th 913, involved a labor dispute between the plaintiff, a janitorial supervisor, and eight subordinates.  After the defendant union published articles about the dispute, the plaintiff sued the union for libel, slander, and other torts.  The union moved to strike the complaint under the anti-SLAPP statute, contending the allegations arose from "conduct in furtherance of the exercise of the constitutional right . . . of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).)  The trial court denied the motion, concluding the statements concerned a minor employment dispute in which the public had no interest.

The appellate court affirmed, stating the disputed "statements concerned the supervision of a staff of eight custodians by Rivero, an individual who had previously received no public attention or media coverage.  Moreover, the only individuals directly involved in and affected by the situation were Rivero and the eight custodians.  Rivero's supervision of those eight individuals is hardly a matter of public interest." (*Rivero*, *supra*, 105 Cal.App.4th at p. 924.)  The court distinguished *Rivero* from cases involving: (1) a person or entity in the public eye (citing *Sipple*, *supra*, 71 Cal.App.4th 226, and *Seelig*, *supra*, 97 Cal.App.4th 798); (2) conduct that could directly affect a large number of people beyond the litigation parties; and (3) a topic of widespread public interest. (*Rivero*, *supra*, 105 Cal.App.4th at p. 924.)[4]

---

[4]      The court in *Rivero* noted the public interest requirement requires something more than the mere publication of a dispute. (*Rivero*, *supra*, 105 Cal.App.4th at p. 926.)  If publication alone were sufficient, the court stated, "anything the Union published would almost automatically become a matter of public interest.  For example, if the Union reported in its newsletter that a supervisor arrived late for work last Wednesday, it could then argue that tardiness in supervisors was a matter of concern in the union membership.
(Fn. continued.)

9

*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122 (*Weinberg*) involved a dispute over the alleged theft of a token. The plaintiff and defendant belonged to an association of approximately 700 token collectors. After the defendant sought to oust the plaintiff from the association for the alleged theft of a token, the plaintiff sued the defendant for libel, slander, and intentional infliction of emotional distress. The defendant moved to strike the complaint under the anti-SLAPP statute, which the trial court denied.

In affirming the denial of the motion, the appellate court explained the dispute concerning the alleged theft of a token was a private matter and "[w]hile private communications about private matters are not totally unprotected by the First Amendment, they warrant no special protection against liability for defamation when they are false and damaging to the subject's reputation. [Citation.]" (*Weinberg*, *supra*, 110 Cal.App.4th at p. 1132.) The court stated the defendant had failed to "present any evidence to show that plaintiff was anything other than a private, anonymous token collector; that their dispute was anything other than a private controversy; or that the communications were made to anyone other than a small group of other private parties." (*Ibid.*)

The court explained the dispute concerning the alleged theft of a token lacked the characteristics of a public issue or an issue of public interest: "First, 'public interest' does not equate with mere curiosity. (*Time*, *Inc. v. Firestone* [(1976)] 424 U.S. [448,] 454-455; *Briscoe v. Reader's Digest Association*, *Inc.* (1971) 4 Cal.3d 529, 537 [overruled on another ground in *Gates v. Discovery Communications*, *Inc.* (2004) 34 Cal.4th 679, 685].) Second, a matter of public interest should be something of concern to a substantial number of people. (*Dun & Bradstreet v. Greenmoss Builders* [(1985)] 472

---

Alternatively, the Union could publish information in an effort to increase its membership vis-à-vis a competing union, as the Union did here, and thereby turn its purely private issue into a public one. If the mere publication of information in a union newsletter distributed to its numerous members were sufficient to make that information a matter of public interest, the public-issue limitation would be substantially eroded, thus seriously undercutting the obvious goal of the Legislature that the public-issue requirement have a limiting effect." (*Ibid.*)

U.S. [749,] 762.)  Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest.  (*Ibid.*; *Hutchinson v. Proxmire* (1979) 443 U.S. 111, 135.)  Third, there should be some degree of closeness between the challenged statements and the asserted public interest (*Connick v. Myers* (1983) 461 U.S. 138, 148-149); the assertion of a broad and amorphous public interest is not sufficient (*Hutchinson v. Proxmire*, *supra*, 443 U.S. at p. 135).  Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort 'to gather ammunition for another round of [private] controversy . . . .'  (*Connick v. Myers*, *supra*, 461 U.S. at p. 148.)  Finally, 'those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure.'  (*Hutchinson v. Proxmire*, *supra*, 443 U.S. at p. 135.)  A person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.  (*Ibid.*; *Rivero v. American Federation of State*, *County and Municipal Employees*, *AFL-CIO*, *supra*, 105 Cal.App.4th at p. 926.)"  (*Weinberg*, *supra*, 110 Cal.App.4th at pp. 1132-1133.)

*D.C.*, *supra*, 182 Cal.App.4th 1190, involved the alleged online bullying by several high school students of plaintiff D.C., a fellow student.  D.C. and his parents filed a complaint against one of the students and his parents (the R.'s) and other defendants, alleging a statutory claim under California's hate crime laws (Civ. Code, §§ 51.7, 52.1) and common law claims for defamation and intentional infliction of emotional distress.  The R.'s moved to strike the complaint under the anti-SLAPP statute, which the trial court denied because the evidence failed to show that the statements were made in connection with a public issue or an issue of public interest.

In affirming the order of denial, Division One of this district found the evidence insufficient to show that the statements were made in connection with a public issue or an issue of public interest.  The court distinguished *Hall*, in which Marlon Brando's former housekeeper had become involved in an issue of public interest by being named a beneficiary in Brando's will.  (*Hall*, *supra*, 153 Cal.App.4th 1337.)  In contrast, the R.'s liability was "premised on a Web site message from one teenager to another.  The message does not mention a public issue.  Rather, it combines a threat of bodily harm

11

with derogatory language.  [¶]  Further, the public was not fascinated with D.C., nor was there widespread public interest in his personal life.  There is no evidence that he was a nationally known singer or actor even under his pseudonym, Danny Alexander.  Indeed, R.R. stated in his declaration that, before seeing D.C.'s Web site, 'I had not heard anything about [D.C.]  I had no knowledge of his acting or singing involvement [and] did not know his interests or habits . . . .'  In short, D.C. was no Brando."  (182 Cal.App.4th at p. 1229.)

The court in *D.C.* rejected the argument, also made by Menounos in this case, that any statement about a person in the public eye is sufficient to meet the public interest requirement of section 425.16, subdivision (e)(4).  Finding no legal support for such a rule, the *D.C.* court stated:  "No authority supports the R.'s broad proposition that anything said or written about a public figure or limited public figure in a public forum involves a public issue.  Rather, as stated, the California cases establish that generally, '[a] public issue is implicated if the subject of the statement or activity underlying the claim (1) was a person or entity in the public eye; (2) could affect large numbers of people beyond the direct participants; or (3) involved a topic of widespread, public interest.'  (*Jewett v. Capital One Bank* [(2003)] 113 Cal.App.4th [805,] 814; see *World Financial Group*, *Inc. v. HBW Ins. & Financial Services*, *Inc.* [(2009)] 172 Cal.App.4th [1561,] 1573; *Century 21 Chamberlain & Associates v. Haberman* [(2009)] 173 Cal.App.4th [1,] 9.)  And where the issue is of interest to only a private group, organization, or community, the protected activity must occur in the context of an ongoing controversy, dispute, or discussion, such that its protection would encourage participation in matters of public significance.  (*Hailstone v. Martinez* [(2008)] 169 Cal.App.4th [728,] 738; *World Financial Group*, *Inc. v. HBW Ins. & Financial Services*, *Inc.*, *supra*, 172 Cal.App.4th at pp. 1572-1573.)  None of those factors applies here."  (182 Cal.App.4th at p. 1226.)  It is not enough, the court stated, "that 'a broad and amorphous public interest' can be connected to a specific dispute."  (*Id.* at p. 1216.)

## II. Analysis

On appeal, Menounos contends the trial court erred in finding that Albanese "does not rise to the level of being in the 'public eye' for purposes of the statute." Menounos asserts that because the evidence showed that "Albanese is clearly in the public eye," the first prong of the anti-SLAPP statute was satisfied.[5] As discussed, the same contention was considered and rejected by the court in *D.C.*, *supra*, 182 Cal.App.4th at pages 1216 and 1226. Menounos nonetheless cites *D.C.* as authority for the same proposition the court rejected in that case. Menounos's reliance on *D.C.* is misplaced.

In addition to *D.C.*, Menounos cites several other cases in support of her contention that any statement about a person in the public eye is sufficient to meet the public interest requirement of section 425.16, subdivision (e)(4). (*Rivero*, *supra*, 105 Cal.App.4th 913, *Jewett v. Capital One Bank*, *supra*, 113 Cal.App.4th 805, *Hailstone v. Martinez*, *supra*, 169 Cal.App.4th 728, *Century 21 Chamberlain & Associates v.*

---

[5] In support of her position that "Albanese is clearly in the public eye," Menounos states that "Albanese starred weekly as a celebrity style expert judge on a popular reality show that garnered over a million viewers per week. She regularly appears on nationally and locally televised shows and programs such as Access Hollywood, E!, Extra, The Style Network, Lifechangers, and Good Day L.A., as well as radio stations such as KIIS fm. She is frequently featured in print and online publications, such as US Weekly, the Los Angeles Times, Life and Style, shopbop.com and AOLStylist.com. She is also the celebrity stylist spokesperson for clothing brands Seven for all Mankind, Catherine Malandrino, Bebe and Famous Footwear Shoes. [¶] As Albanese concedes, she 'appears regularly as an **on-camera** style expert for various style segments on television and radio.' Albanese touts that she is regularly 'in front of the camera,' and that doing so keeps her 'insanely busy.' Albanese insists that 'it's super important for me to stay relevant and connect with my fans and followers daily.' [¶] Through a regimen[] of publicity, Albanese has spent her entire career successfully injecting herself into and making certain she is in the public eye. Therefore, alleged comments about her are public issues and concern issues of public interest, particularly when those alleged comments relate to the subject matter for which she has gained her notoriety." (Internal record citations omitted.)

13

*Haberman*, *supra*, 173 Cal.App.4th 1.) Contrary to her assertion, these cases do not support the existence of the rule that Menounos seeks to apply in this case.[6]

Menounos contends, however, that our statements in *Nygard* created a rule that any statement about a person in the public eye is a matter of public interest. She relies on our statements in *Nygard* that (1) an issue of public interest is "*any issue in which the public is interested*," and (2) an "issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest." (*Nygard*, *supra*, 159 Cal.App.4th at p. 1042.)

We disagree with Menounos's reading of *Nygard*. *Nygard* did not redefine what constitutes a matter of public interest. *Nygard* must be read in the context of the evidence, which showed there was an "'extensive interest' in Nygard—'a prominent businessman and celebrity of Finnish extraction'—among the Finnish public," as well as a "particular interest among the magazine's readership in 'information having to do with Mr. Nygard's famous Bahamas residence which has been the subject of much publicity in Finland.'" (*Nygard*, *supra*, 159 Cal.App.4th at p. 1042.) *Nygard* does not stand for the proposition that any statement about a person in the public eye is a matter of public interest.

If we were to adopt Menounos's overly broad definition of a public issue, we would obliterate the requirement that "there should be a degree of closeness between the challenged statements and the asserted public interest. The assertion of a broad and

---

[6]    *Rivero* involved a minor labor dispute that did not arise from statements made in connection with a public issue or issue of public interest.

*D.C.* squarely rejected the proposition that any statement concerning a public figure is a matter of public interest.

*Jewett* involved credit card solicitations that did not qualify for protection under the anti-SLAPP statute.

*Hailstone* involved statements made in connection with an ongoing controversy which, because of its significance to more than 10,000 union members, was of interest to a significant number of people beyond the litigants in the case.

*Century 21* involved an alleged demand to arbitrate a negligence claim, which was neither a public issue nor an issue of public interest.

14

amorphous public interest is not sufficient.  Moreover, the focus of the speaker's conduct should be the public interest, not a private controversy."  (*Hailstone v. Martinez*, *supra*, 169 Cal.App.4th at p. 736.)

At best, the evidence in this case shows there is some public interest in Albanese based on her profession as a celebrity stylist and style expert.  But there is no evidence of a *public* controversy concerning Albanese, Menounos, or Dolce and Gabbana.  Even if Albanese is rather well known in some circles for her work as a celebrity stylist and fashion expert, there is no evidence that the public is interested in this private dispute concerning her alleged theft of unknown items from Menounos or  Dolce and Gabbana.  In short, there is no evidence that any of the disputed remarks were topics of public interest.

Menounos contends that Albanese voluntarily placed herself in the public eye by creating and maintaining a Web page and the like.  Assuming that is so, we do not believe the resulting publicity was sufficient to make her "a public figure for all purposes and in all contexts."  (*D.C.*, *supra*, 182 Cal.App.4th at p. 1230.)  The appellate court's remarks concerning the teenage plaintiff in *D.C.*, who had performed as a singer and actor, but had not achieved "pervasive fame or notoriety, and . . . was not in the midst of a particular public controversy" (*ibid.*), are equally applicable to the plaintiff in this case: "[T]he public was not fascinated with D.C., nor was there widespread public interest in his personal life." (*Id.* at p. 1229.)  "In short, D.C. was no Brando."  (*Ibid.*)

We distinguish this case from *Seelig*, *supra*, 97 Cal.App.4th 798, in which the plaintiff, by voluntarily appearing on *Who Wants to Marry a Multimillionaire*, had invited public comment regarding her appearance on that program.  Similarly, we distinguish this case from *Sipple*, *supra*, 71 Cal.App.4th 226, in which the plaintiff, by advising prominent political candidates to campaign against domestic violence, had invited public comment regarding his alleged abusive conduct toward his own ex-wives.  There was no similar evidence in this case that Albanese, for example, by publicly promoting her own moral superiority had invited public comment regarding her alleged theft of property from Menounos or Dolce and Gabbana.

In conclusion, even assuming that Albanese is a well known celebrity stylist and fashion consultant, there is no evidence that she was involved in a public controversy or that her fame is so great that her involvement in this private dispute is a matter of public interest. We therefore conclude the public interest requirement of section 425.16, subdivision (e)(4) was not met in this case.

Turning to the issue of attorney fees, Albanese contends she is entitled to such fees under section 425.16, subdivision (c)(1). She argues that Menounos "exceeded the bounds of rational argument in attempting to (a) transform Albanese into a 'public figure,' and (b) turn what was clearly a private dispute into a matter of 'public interest.'" Although we rejected Menounos's contentions on the merits, we cannot say her contentions were frivolous or exceeded the bounds of rational argument. As demonstrated by the dissenting justice's opinion in *D.C.*, *supra*, 182 Cal.App.4th at pages 1231-1261, what constitutes an issue of public interest is open to more than one rational interpretation. The request for attorney fees is denied.

## DISPOSITION

The order is affirmed. Albanese is entitled to recover her costs.

## CERTIFIED FOR PUBLICATION

SUZUKAWA, J.

We concur:

EPSTEIN, P. J.                              MANELLA, J.

16