Filed 2/26/15  Simorangkir v. Cobain CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DAWN SIMORANGKIR, | B254895 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC521565) |
| v. | |
| COURTNEY LOVE COBAIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed.

Dongell Lawrence Finney LLP, Richard A. Dongell and Marc Gans for Defendant and Appellant.

Freedman & Taitelman LLP, Bryan J. Freedman and Jesse A. Kaplan for Plaintiff and Respondent.

1

INTRODUCTION

This is the second action between these parties related to allegedly defamatory statements which Courtney Love Cobain (defendant) made concerning Dawn Simorangkir (plaintiff). The first action between the parties was resolved by a settlement in which defendant paid plaintiff $430,000. In this litigation, plaintiff sues for statements made by defendant in public media two years later.

Determining that the dispute between these parties is not "an issue of public interest" as that term is defined by Code of Civil Procedure[1] sections 425.16, subdivisions (e)(3) and (4), we affirm the trial court's denial of defendant's motion to dismiss the first amended complaint.

PROCEDURAL HISTORY

Plaintiff filed this action on September 17, 2013, and her First Amended Complaint for Defamation on December 16 of that year. Plaintiff there alleges that she is an "up and coming fashion designer [who] was previously the victim of [defendant's] vicious, repulsive and conspicuously defamatory rants in multiple public forums . . . where [plaintiff] conducted business, and [that defendant also published these defamatory rants] to [plaintiff's] clients and others in the fashion industry." Plaintiff alleges that on May 30, 2013, two years following resolution of the earlier defamation litigation, "[defendant] appeared on the Howard Stern show, a popular talk show that is broadcast to millions," and repeated the false allegations which had been the subject of the prior litigation and settlement, that plaintiff had stolen from defendant and that plaintiff had engaged in prostitution. She further alleges that defendant continued to defame plaintiff even after Stern cautioned her. As an independent basis for her allegations of defamation, plaintiff alleges that, also in the spring of 2013 and independent of her acts

---

[1] All subsequent undesignated references are to the Code of Civil Procedure.

2

while on that show, defendant posted on Pinterest, a popular social media Web site, some of the same defamatory claims, adding others.

Defendant moved to dismiss this litigation as a "meritless Strategic Lawsuit Against Public Participation" under subsections (3) and (4) of section 425.16, subdivision (e) (commonly referred to as an "anti-SLAPP motion), arguing the statements complained of arise from protected activity and that plaintiff cannot establish the requisite probability of prevailing at trial on the merits of her claims.

The parties having filed memoranda and offered evidence in support of, and in opposition to, the anti-SLAPP motion, the matter was argued on February 20, 2014, and submitted.[2]  The court issued a minute order later the same day in which it made rulings on certain but not all of the evidence issues presented[3] and, with respect to the merits of the motion, wrote:  "The motion is called and argued. [¶] The motion is denied."  The court ordered plaintiff to give notice.  No other order stating the rulings made is in the record.  Plaintiff's notice of ruling, filed February 26, 2014 includes, inter alia, the evidence rulings, and expands on the trial court's "The motion is denied" statement, as follows:

"1.  Defendant's anti-SLAPP Motion is DENIED.

"2.  Defendant's statements are not on a matter of public interest.  There is no showing by the Defendant that the Plaintiff is a public figure in any way or that the matter was in the public eye, involved a topic of widespread public interest, or an ongoing discussion or debate.  Accordingly, Defendant failed to satisfy her burden.

"3.  Plaintiff has also established a probability that she will prevail on her cause of action for defamation. . . ."

---

[2]     No court reporter was present to record the parties' arguments or any oral rulings by the court.

[3]     The trial court ruled on plaintiff's objections to declarations of defendant and of Marc Gans.  Although other written evidence objections were made, there is no indication that the trial court made any rulings on those objections.

3

Defendant filed a timely notice of appeal.[4]

## FACTUAL BACKGROUND[5]

Plaintiff is an independent clothing designer headquartered in Austin, Texas. She markets her clothes principally through the internet under the trade name "Boudoir Queen" and using the "online store" www.etsy.com ("Etsy"). One distinguishing characteristic of her clothing line is that each garment includes pieces of used garments combined or individually utilized in distinctive ways.

Defendant, a celebrity performer, began to purchase clothing from plaintiff in 2008, flying plaintiff to Los Angeles in November of that year to meet regarding using a substantial quantity of defendant's worn clothes to create custom clothing for her. In the two trips which plaintiff made to meet with defendant, first to defendant's home and later to defendant's hotel after she had moved out of her home, defendant observed plaintiff's surroundings to be in a state of chaos and disarray. On the first visit, to defendant's then home in Malibu, plaintiff observed clothing scattered everywhere, including on the front lawn. On the visit to defendant in her hotel room, plaintiff saw that it was in a state of total confusion. Over the course of their business relationship defendant expressed concern with plaintiff's custody of her clothing, leaving voicemail messages (which

---

[4]     Appeal of an order denying a motion under section 425.16 is authorized by its subsection (i) and by section 904.1, subdivision (a)(13). This minute order is sufficient as an appealable order as it did not direct the preparation of a further written order (see *In re Marriage of Russo* (1971) 21 Cal.App.3d 72, 77; *Teichner v. Klassman* (1966) 240 Cal.App.2d 514, 525) and no other statute requires entry of a formal order on the instant ruling. (Cf., § 581d, which requires a written order signed by the court [including a signed minute order] when an action is dismissed.)

[5]     In compliance with applicable authorities, in setting out the facts and allegations necessary to our consideration of this appeal, "We consider 'the pleadings, and supporting and opposing affidavits upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212, 12 Cal.Rptr.3d 786.)" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)

plaintiff considered threatening) alleging plaintiff had lost or taken defendant's clothing. Defendant also refused to acknowledge the detailed inventories which plaintiff had provided to her, rejecting plaintiff's offer to return the articles of clothing which defendant had given plaintiff to use in fashioning new garments of plaintiff's distinctive designs.

In March 2009, defendant posted a series of allegedly defamatory statements about plaintiff on internet sites Pinterest and Etsy in which she asserted that defendant stole from her; defendant claimed both to have observed the theft and to have a video recording of it. In the same month defendant engaged in a "16-minute rant" on twitter in which she accused plaintiff of being a felon, stealing cash and goods from her, having a history of dealing cocaine, losing custody of a child, and having a record of prostitution. Defendant later purchased additional clothing from plaintiff and apologized for her statements. This and other conduct led to the earlier and now-settled litigation.

In May 2013, defendant appeared on the Howard Stern show. During the course of that appearance and in response to a question about her "troublesome Twitter habits and [plaintiff's] prior defamation lawsuit," defendant stated: "She had—I felt like she had stolen from me . . . She allegedly stole from me?! I have it on CCTV. Okay, she allegedly stole from me." Stern then stated: "I wouldn't say something unless I knew that it to be [*sic*] one-hundred percent true and I could back it up and prove it. . . ." Defendant, next stated: "Well, the fact that in one case someone had told me that they had engaged in prostitution. You know." Stern responded, "See that is what I am saying. You throw things out there. Like 'someone,' 'prostitution,' and a 'name.'" Despite Stern's warnings, [defendant] continued to defame [plaintiff]: "No, she—they told me that. Maybe they were lying, But [*sic*] you know, hey." Plaintiff alleges that listeners understood defendant's comments to mean that plaintiff had stolen from defendant and that plaintiff had engaged in prostitution.

Within a few weeks of this television appearance, defendant also posted on Pinterest claims that plaintiff had stolen from her, that the theft was recorded on CCTV and that the theft was observed by named individuals. Defendant started one "tweet"

with the words "you stole [*sic*] 36 bags of my txtiles [*sic*] and designs" and concluded that "tweet" with the word "Fact." Defendant did not include in her "tweets" the allegation of prostitution.

CONTENTIONS

Defendant contends the statements she made on the Howard Stern show and on the Pinterest internet site were made in connection with an issue of public interest, which she identifies as being derived from the media coverage of the prior litigation between the parties coupled with the "celebrity" status of each of them, and that plaintiff cannot establish a probability of prevailing on her defamation claims, citing both subsections (3) and (4) of section 425.16.

Plaintiff challenges defendant's contention that the present litigation is a matter of public interest or a public issue. She also argues that the trial court correctly determined that she had established a sufficient probability of prevailing at trial to warrant the trial court's denial of defendant's motion.

ANALYSIS

*Principles on review of anti-SLAPP motions*

Section 425.16 provides, inter alia, that, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

"Resolution of an anti-SLAPP motion 'requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the

6

United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53.)" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.)

Our review of the record is de novo and independent of the trial court's legal conclusions (*Soukup, supra,* 39 Cal.4th at p. 269, fn. 3); we determine whether the asserted cause of action arises from the defendant's free speech or petitioning activities as are within the scope of section 425.16. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999.)

The subparts of section 425.16, upon which defendant relies in arguing that she has established the "first prong" of an "anti-SLAPP analysis" and thereby has shifted the burden to the plaintiff to establish the "second prong" that plaintiff has the requisite probability of prevailing at trial, provide:

"(e) As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: . . . (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

The term "issue of public interest," appears in both subsections (3) and (4) and cases which construe this term in the latter subsection can be used to define the same term as it appears in the former section. (See, *1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 583.)

*Application of principles*

Defendant offers multifaceted arguments that the statements she made on the Howard Stern show and on an internet site are "in connection with an issue of public

7

interest" (§ 425.16, subd. (e) (3)) and, alternatively, are "other conduct . . . in connection with a public issue or an issue of public interest" (§ 425.16, subd. (e)(4)).  First, she contends that the statements made meet these statutory requirements "as evidenced by the extensive media coverage of [the parties'] *prior* dispute. . . ."  (Emphasis added.)  Next, she contends, they come within the statute because both of the parties involved are "celebrities," and due to the circumstance that what defendant said and "tweeted" were "[c]omments referencing litigation that has received extensive media attention . . . ," also referencing the prior dispute.

Defendant also argues both the Howard Stern show on which she made, and the internet site on which she posted, the comments at issue are public fora.  Plaintiff does not challenge the public forum contention; we accept this as a concession that the Howard Stern program and the Web site on which the statements were posted are public fora.

The core argument is that defendant's statements—that plaintiff had stolen clothing items from defendant and that defendant had been a prostitute—are statements made in connection with "an issue of public interest," or "a public issue," within the scope of the anti-SLAPP statute because she and plaintiff are celebrities and the prior dispute between the parties had been the subject of "extensive and prolonged national news coverage."  In support of her "public issue/public interest" claim defendant points to the circumstanced that Howard Stern asked her about her tweeting habits and about the prior litigation between these parties as demonstrating continued public interest in the subject.  Defendant does not offer any independent basis for her unilateral posting of the allegedly defamatory statements on the internet.  We note also that the "tweets" made no reference to the prior litigation.

As noted above, to establish the "first prong" of her anti-SLAPP motion, defendant has the burden to establish that the cause of action challenged "arise[s] from an[] act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue. . . ."  (§ 425.16, subd. (b)(1).)  "In making its determination, the court shall

8

consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) Thus, the legal contentions advanced are considered in light of the facts properly admitted.

In the trial court, the evidence which defendant offered in support of her "first prong" contention consisted of two declarations, hers and that of one of her counsel, Marc Gans, together with extensive exhibits attached to the latter. The trial court sustained numerous objections to each declaration, none of which is challenged on this appeal.[6] We have reviewed the portions of those declarations which were admitted into evidence as well as the allegations of the first amended complaint and find that there is no evidence in the record of any articles in the media about the current litigation in contrast to evidence that the prior litigation was the subject of media interest and comment. Nor is there any evidence of the timing of the posting of the "tweets" alleged to be defamatory in the first amended complaint (other than they occurred within the year prior to the filing of the complaint).

Plaintiff objects to defendant's argument that the prior media coverage which is in evidence is indicative of public interest in this new litigation, arguing that this contention was not made to the trial court, and that it is thereby forfeited, citing *North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 28-30 and *Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 872-873. While theories not raised in the trial court generally may not be asserted for the first time on appeal (see *Hale v. Morgan* (1978) 22 Cal.3d 388, 394 and *Ward v. Taggart* (1959) 51 Cal.2d 736, 742), here the fact of prior media coverage was presented in defendant's moving papers and it was specifically noted in the first amended complaint. For these reasons, we will consider

---

[6]     When a trial court has ruled on evidence objections and there is no request made that we review those rulings, as in this case, we may accept those rulings as part of the evidentiary basis for our de novo review. In any event, the standard of review of *evidence rulings* for anti-SLAPP motions is abuse of discretion. (*Morrow v. Los Angeles Unified School District* (2007) 149 Cal.App.4th 1424, 1444.) Assuming arguendo that the defendant had challenged the trial court's rulings adverse to it in this court, we find no abuse of discretion in the trial court sustaining the objections made.

9

that circumstance as a factor in determining whether defendant prevails on the first prong of this anti-SLAPP motion. We note in this regard the absence of any evidence in the record that the current allegedly defamatory statements were the subject of any public interest.

*Claimed celebrity status of the parties*

There is virtually nothing in evidence concerning the "celebrity" status of plaintiff; nor does defendant provide any definition of what the term means. Defendant appears to be relying on the circumstance that plaintiff's name and business description appears in articles posted on the internet in connection with the prior litigation of the parties and that plaintiff does advertise on the internet. The only evidence in the record consists of the allegation of the complaint that she is an up and coming fashion designer headquartered in Austin, Texas and that she has designed clothes worn by celebrities including defendant.

There are three categories of references to defendant's celebrity status. Defendant's own declaration states that "I live my life in the public eye. . . ." The same source makes specific references to her profession which involves public appearances and notoriety. The Gans declaration contains one paragraph which addresses the defendant's public personage. It begins: "Love is an accomplished and well-acclaimed celebrity subject to widespread media attention." Many of the admitted exhibits attached to that declaration support the conclusion that she is a "celebrity" however the term may be defined. As will be seen, other issues will be determinative and we need not further analyze this aspect, or counsel's professed but unsupported expertise in so declaring his client.

*Public interest factor*

Defendant relies on several cases, including those now discussed, to sustain her burden on the first prong. In *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883 (*Wilbanks*), the court considered whether the defendant's publication of statements critical of the

10

plaintiff's viatical settlement brokerage[7] were made in connection with an issue of public interest. Defendant quotes a portion of the court's introduction to its discussion of what constitutes an issue of public interest, as follows:

"The most commonly articulated definitions of 'statements made in connection with a public issue' focus on whether (1) the subject of the statement or activity precipitating the claim was a person or entity in the public eye; (2) the statement or activity precipitating the claim involved conduct that could affect large numbers of people beyond the direct participants; and (3) whether the statement or activity precipitating the claim involved a topic of widespread public interest. (*Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26, 33, 1 Cal.Rptr.3d 390; *Rivero v. American Federation of State, County, and Municipal Employees, AFL–CIO* (2003) 105 Cal.App.4th 913, 924, 130 Cal.Rptr.2d 81 (*Rivero*).)" (*Wilbanks, supra,* 121 Cal.App.4th at p. 898.)

We set out the balance of that paragraph to indicate that the text that follows contains limiting language of assistance in resolving this appeal. The paragraph quoted by defendant concludes as follows:

"As to the latter, it is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate. (*Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 1 Cal.Rptr.3d 501 (*Du Charme*) [report that an employee was removed for financial mismanagement was informational, but not connected to any discussion, debate or controversy]; *Consumer Justice Center v. Trimedica International, Inc.* (2003) 107 Cal.App.4th 595, 601, 132 Cal.Rptr.2d 191 [advertisements about a pill offering a natural alternative to breast implants are not about the general topic of herbal supplements]; *Rivero, supra,* 105 Cal.App.4th at p. 924, 130 Cal.Rptr.2d 81 [reports that a particular

---

[7]    A viatical settlements brokerage arranges for insureds to sell their life insurance policies to investors for large discounts from the ultimate death benefit. The matter is controversial, and of public interest, inter alia, because of the large discounts at which such transactions occur and because, "As a practical matter the sooner the "viator" dies, the greater the return on the investment. (*Wilbanks, supra,* 121 Cal.App.4th at p. 889.)

11

supervisor was fired after union members complained of his activities are not a discussion of policies against unlawful workplace activities].) (*Wilbanks, supra*, 121 Cal.App.4th at p. 898.)

Thus, *Wilbanks* points out an important condition on whether a matter is one within the definition of "public interest" in the subsections we are called upon to construe and apply in this case (§ 425.16, subds. (e)(3) and (4)): *whether the statement in some manner itself contributes to the public debate.* We will conclude that defendants' statements do not meet this test. (*Wilbanks, supra*, 121 Cal.App.4th 883.)

The second case cited by defendant is *Hall v. Time Warner, Inc*. (2007) 153 Cal.App.4th 1337, in which Marlon Brando's retired housekeeper filed an action for invasion of privacy based on the publication on a national television show concerning the world renowned actor having named her as a beneficiary of his will while passing over several heirs at law. In holding that the matter was in the public interest under the first prong, the court describes why the public interest element was present in the following terms:

"The public's fascination with Brando and widespread public interest in his personal life made Brando's decisions concerning the distribution of his assets a public issue or an issue of public interest. Although Hall was a private person and may not have voluntarily sought publicity or to comment publicly on Brando's will, she nevertheless became involved in an issue of public interest by virtue of being named in Brando's will. The defendants' television broadcast contributed to the public discussion of the issue by identifying Hall as a beneficiary and showing her on camera. We conclude that the acts from which the complaint arises, specified *ante,* constituted conduct in furtherance of the defendants' right of free speech 'in connection with a public issue or an issue of public interest' (§ 425.16, subd. (e)(4))." (*Hall v. Time Warner, Inc., supra,* 153 Cal.App.4th at p. 1347.)

12

In the present case, there is no evidence of any such interest. Nothing in the record in this case suggests that defendant has the public interest or following that Brando had; the only evidence in the record is her self-serving and factually shallow claim, coupled with a profession of celebrity by one of her lawyers. Nor is there is any socially important implication in this case akin to that presented by Brando's gift to his housekeeper to the exclusion of his heirs at law, or as in the viatical settlements case upon which defendant also relies. Further, there is no evidence of any such celebrity on the part of plaintiff. The record contains only her own description of herself in the present complaint as an "up and coming fashion designer," and copies of print outs of postings on the internet regarding the prior litigation, and claims by defendant's counsel of the number of "followers" plaintiff has on three Web sites. There is no evidence of any renewed interest on the part of the public in this renewed litigation.

*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798 (*Seelig*), addressed whether statements by a San Francisco radio show mocking the plaintiff, a former participant on a "reality television show" (Who Wants to Marry A Multimillionaire), were made in connection with an issue of public interest. There, the plaintiff had voluntarily placed herself in the public eye by willingly participating in a television program which had "generated considerable debate within the media on what its advent signified about the condition of American society." (*Id*. at p. 807.) There is no evidence in this case that plaintiff interjected herself into any public forum or that defendant's personalized attacks on plaintiff have any general social significance.

The closest case upon which defendant relies is *Nygard, Inc. v. Uusi-Kerttulla* (2008) 159 Cal.App.4th 1027 (*Nygard*), which involved statements made by a terminated company employee to the press regarding specific activities of the owner of his employer entity. In sustaining the trial court's ruling that the matter was one of public interest, the Court of Appeal stated:

13

"'Taken together, these cases and the legislative history that discusses them suggest that 'an issue of public interest' within the meaning of section 425.16, subdivision (e)(3) is *any issue in which the public is interested.* In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest. Judged by this standard, the trial court correctly concluded that the statements on which the present suit is based concern an issue of public interest. According to evidence introduced by defendants in support of their motions to strike, there is 'extensive interest' in Nygård—'a prominent businessman and celebrity of Finnish extraction'—among the Finnish public. Further, defendants' evidence suggests that there is particular interest among the magazine's readership in 'information having to do with Mr. Nygård's famous Bahamas residence which has been the subject of much publicity in Finland.' The June 2005 article was intended to satisfy that interest." (*Nygard, supra,* 159 Cal.App.4th at p. 1042.)

In opposition, plaintiff relies on cases which reach contrary conclusions on arguably similar facts. Of particular relevance to the present case is *Albanese v. Menounos* (2013) 218 Cal.App.4th 923 (*Albanese*), in which the *Nygard* court limited the language quoted above on which plaintiff relies. In the later case, a well-known stylist with substantial entertainment industry experience who had worked as a stylist for the celebrity defendant for over four years was accused at a public event at the W Hotel in Hollywood of stealing; the allegation was that plaintiff had taken but never returned "anything." The same allegation was later repeated. (*Id*. at p. 927.)

In her motion under section 425.16, subdivision (e)(4) in response to the stylist's suit for defamation and other claims, the defendant claimed her allegations of theft constituted speech in connection with a public issue or an issue of public interest "because [plaintiff] is in the public eye and (2) any statement concerning a person in the public eye qualifies as 'speech in connection with a public issue or an issue of public

14

interest.'" (*Ibid.*) Defendant's counsel supported this contention in part by citing the contents of plaintiff's own Web site which referenced plaintiff's work for other celebrities and that a Google search revealed hundreds of thousands (662,000) "hits" on plaintiff and her career.

The trial court denied the motion under the first prong of the anti-SLAPP statute for the following reasons: (1) that plaintiff is a celebrity stylist does not mean that she is in the 'public eye' for purposes of the statute; (2) the allegation that the plaintiff stole from the defendant "does not involve conduct that could affect large numbers of people beyond the direct participants;" and (3) the alleged statement "does not involve a topic of widespread public interest." (*Albanese, supra,* 218 Cal.App.4th at pp. 927-928.)

In affirming the denial of the anti-SLAPP motion, Division Four of this court first considered several other cases addressing the public interest requirement and then proceeded to distinguish its holding in *Nygard*, *supra,* stating:

"We disagree with [defendant's] reading of *Nygard. Nygard* did not redefine what constitutes a matter of public interest. *Nygard* must be read in the context of the evidence, which showed there was an "'extensive interest' in Nygard—'a prominent businessman and celebrity of Finnish extraction'—among the Finnish public," as well as a "particular interest among the magazine's readership in 'information having to do with Mr. Nygard's famous Bahamas residence which has been the subject of much publicity in Finland.'" (*Nygard, supra,* 159 Cal.App.4th at p. 1042 [72 Cal.Rptr.3d 210].) *Nygard* does not stand for the proposition that any statement about a person in the public eye is a matter of public interest." (*Id.* at pp. 935-936.)

Division Four explained: "'If we were to adopt [defendant's] overly broad definition of a public issue, we would *obliterate the requirement that "there should be a degree of closeness between the challenged statements and the asserted public interest*. The assertion of a broad and amorphous public interest is not sufficient. Moreover, *the*

15

*focus of the speaker's conduct should be the public interest, not a private controversy*.' (*Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 736 [87 Cal.Rptr.3d 347].)" (*Albanese, supra*, 218 Cal.App.4th at p. 936, emphasis added.)

Defendant in this case contends that her comments on the Howard Stern show and on the internet have a relationship to the public interest in that they foster debate about the scope of freedom of expression on the internet and in other public fora. Yet, defendant presented no admissible evidence that any such debate followed either her appearance on the Howard Stern show or after her internet postings. Assuming arguendo that the public discussion which occurred during the first lawsuit was as vibrant as she claims, it is at least odd that defendant presented no evidence of any similar public debate following her statements which are the focus of this litigation. Nor does the unsubstantiated "celebrity" status of the plaintiff assist defendant's arguments.

This case is unlike *Annette F. v. Sharon S.* (2004) 119 Cal.App.4th 1146, upon which defendant relies. There, a series of lawsuits and appellate court rulings concerning second parent adoption rights of same sex parents were parts of a long-continuing public debate and had far reaching effect on persons adopting children. Here, by contrast, there is no evidence that defendant's repetition of prior comments reopened "debate" on an issue of supposed but unproven public interest.

Further, in analyzing first prong issues we focus on the specific nature of the statements rather than on any generalities which may be abstracted from them. Thus, in *Rivero, supra,* 105 Cal.App.4th 913, the court held that "unlawful workplace activity below some threshold level of significance is not an issue of public interest, even though it implicates a public policy." (*Id*. at p. 924.) There, the court found insufficient to meet the statute's first prong threshold of 'relating to an issue of public interest' claims in documents concerning the supervisor plaintiff's alleged theft, extortion, nepotism, acceptance of bribes, and abusive treatment of the group of janitors he supervised

16

notwithstanding that public funds were involved." (*Id.* at p. 925.)

Just as matters of an individual's credit history have been determined not to be a matter of public concern under the First Amendment (*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.* (1985) 472 U.S. 749, 761-762 [105 S.Ct. 2939, 2946-2947]), claims by one party that another has stolen articles of clothing are not on this record of sufficient moment to reach the first prong threshold of 'relating to an issue of public interest' as defendant claims. Further, defendant has made no credible argument that her assertions regarding plaintiff's claimed prostitution constitute a matter of public interest.

Defendant's citation of *Wilbanks, supra*, 121 Cal.App.4th 883 is telling as there the Court of Appeal held that a defendant moving to strike a complaint under section 425.16 must demonstrate that the present topic is of *widespread* public interest. (See, *id.* at p. 898.) There is nothing in defendant's statements on the Howard Stern show or on the internet to suggest that she is doing more than seeking to advance her own narrow "rant" against plaintiff. Her claims that plaintiff has stolen from her do not meet the test of interest to the public within the meaning of the anti-SLAPP statute; they are of concern to her (and, perhaps as she argues, to a small number of others), but they do not "contribute to the public debate" about a topic of widespread public interest. (Accord, *Du Charme, supra,* 110 Cal.App.4th at pages 108-109 [holding that statements in the public interest must contribute to the public debate of some issue and denying defendant's anti-SLAPP claim that allegedly defamatory statements about plaintiff's termination posted on the internet qualified as statements in connection with a public issue or an issue of public interest].)

Defendant's reliance on *Traditional Cat Assn., Inc. v. Gilbreath* (2004) 118 Cal.App.4th 392 is problematic. There, discussion of the first prong was little more than a paragraph in length and, as plaintiff argues, did not describe or discuss the evidence supporting the conclusion that this prong had been met. In the same paragraph that court

also notes that the alleged defamation may also have come within the subsection covering comments in connection with judicial proceedings (§ 425.16, subd. (e)(2)). (*Id*. at p. 397.) Reliance on that case is therefore unpersuasive here.

Because we conclude that defendant has not met her first prong burden, we do not address her other contentions.[8]

DISPOSITION

The order denying defendant's motion to strike under section 425.16 is affirmed. Plaintiff shall recover her costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

GOODMAN, J.[*]

We concur:

TURNER, P.J.

KRIEGLER, J.

---

[8]    Plaintiff's motion to strike portions of appellant's reply brief is denied based on this disposition.

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18